## MARSH v. FULTON COUNTY.

1. In February, 1853, the Mississippi and Wabash Railroad Company was incorporated by the legislature of Illinois, and authorized to construct a railroad from Warsaw, on the Mississippi River, to the east line of the State. In February, 1857, an act was passed by that legislature amending the charter of the company, by which the line of the railroad was divided into three divisions, designated as the Western, the Central, and the Eastern, and each division was created a new company; so that there were three distinct corporations in place of the original corporation;—*Held*, that a subscription of stock and issue of county bonds, authorized upon a vote of the people of the county to the original corporation, could not be legally made to one of the three new corporations.

2. Where county bonds to a·railroad company are issued without any authority, they are invalid in the hands of an innocent purchaser.

* United States v. Bank of Columbus, 21 Howard, 364.

The authority to contract must exist before any protection as innocent purchaser can be claimed by the holder.

3. A ratification being in its effect, upon the act of an agent, equivalent to the possession by him of a previous authority, and operating upon the act ratified in the same manner as though the authority of the agent to do the act existed originally, can only be made when the party ratifying possesses the power to perform the act ratified. Accordingly, where supervisors of a county possessed no authority to make a subscription or issue bonds to a railroad company, in the first instance, without the previous sanction of the qualified voters of the county, they could not ratify a subscription to the company already made without such authorization.

ERROR to the Circuit Court for the Southern District of Illinois. The case was thus:

In 1849 the legislature of the State of Illinois passed an act, which provided that whenever the citizens of any city or county in that State were desirous that such city or county should subscribe for stock in any railroad company already organized or incorporated, or thereafter to be organized or incorporated under any law of the State, such city or county might and were authorized to purchase or subscribe for shares of the capital stock in any such company, in any sum not exceeding $100,000 for each of such cities or counties; but that no subscription should be made, or purchase or bond issued, under the provisions of the act, whereby any debt should be created, unless a majority of the qualified voters of such county or city should vote for the same. The act also required that the notices calling for the election should *specify the company in which stock was proposed to be subscribed.*

A law of the State of 1861 provided that the powers of a county in Illinois could only be exercised by the board of supervisors thereof, or in pursuance of a resolution by them adopted.*

In February, 1853, the Mississippi and Wabash Railroad Company was incorporated by the legislature of Illinois, and authorized to construct a railroad from Warsaw on the Mississippi River to the east line of the State.

---

* Gross's Statutes of Illinois, 751.

In September, 1853, the board of supervisors of Fulton County, through which county the projected line of the road was to run, ordered that the question be submitted to the voters of the county at the ensuing November election whether the county should subscribe $75,000 to the capital stock of this company, and a like sum to the capital stock of the Petersburgh and Springfield Railroad Company, payable in the bonds of the county; such bonds not to be issued to the former company until its secretary should certify to the board that $700,000 had been subscribed to its stock and 5 per cent. thereon had been paid. At the election mentioned the vote was taken, and a majority of the votes of the county was cast in favor of the subscription.

In April, 1854, the board ordered its clerk to subscribe the $75,000 voted to the Mississippi and Wabash Company, and to issue the bonds when it should be certified to him by the secretary of the company that $700,000 of the stock had been subscribed and 5 per cent. thereon had been paid.

In September, 1855, a similar order was made by the board, requiring its clerk to enter the subscription on the books of the company in the name of the County of Fulton.

In February, 1857, an act was passed by the legislature of Illinois amending the charter of the Mississippi and Wabash Company, by which the line of the railroad was divided into three divisions, designated the Western, the Central, and the Eastern divisions, and each division was placed under the management and control of a board of three commissioners, to be elected by the stockholders of the division, and to be invested with all the powers of the original board of directors of the company over the road in their division.

In April, 1857, the stockholders within the Central Division elected commissioners of the division, who thenceforth, until December, 1868, exercised all the powers conferred by this amendatory act.

On the books of the Central Division thus organized, the clerk of the County Court of Fulton County, acting as clerk of the board of supervisors of that county, made the subscription of $75,000 in the name of the county, and in Sep-

tember following issued to this division the fifteen bonds which are in suit in this cause. These bonds purport to be obligations of the County of Fulton to the Central Division of the Mississippi and Wabash Railroad Company, and pledge the faith of the county, and its property, revenue, and resources for their payment.

The following is a copy of a bond and coupon ·

---

"No. 11.                                                    $500.

"UNITED STATES OF AMERICA,
          STATE OF ILLINOIS, COUNTY OF FULTON.

"Bond due in ten years after date.—Central Division, Mississippi and Wabash Railroad Company.

"Know all men by these presents that there is due from the County of Fulton to the Central Division of the Mississippi and Wabash Railroad Company, OR BEARER, five hundred dollars, lawful money of the United States, with interest at the rate of seven per cent. per annum, payable annually on the first day of July in each year, at the treasury of said County of Fulton, on the presentation and surrender of the annexed coupons. The principal to be due and payable ten years from the date hereof. For the performance of all which the faith of the said County of Fulton is irrevocably pledged, as also the property, revenue, and resources of said County of Fulton.

"In testimony whereof John H. Peirsol, clerk of the County Court, has hereunto subscribed his name and affixed the common seal of said County Court this 1st day of September, 1857.

[L. S.]                              "JOHN H. PEIRSOL,
                                         "Clerk of the County Court."

---

"Bond No. 11.          STATE OF ILLINOIS.          $35.

"The County of Fulton will pay thirty-five dollars on this coupon on the first day of July, 1859, at the treasury of said county.

                                   "JOHN H. PEIRSOL,
                                      "Clerk of the County Court."

There were various acts of the board of supervisors of Fulton County done after the issue of these bonds, which tended to show that the board recognized them and considered the county bound for them.

Interest was on one occasion paid on some of the bonds by the county treasurer, and the amount paid was allowed to him by the board in settlement.

The records of the board, held on the 15th of September, 1857, showed the adoption of a report of the finance committee, estimating the amount required to pay the interest on county bonds, "issued and to be issued" that year, including county expenses and interest on railroad bonds, and levying a tax to pay the same, with no reservation or exception as to these bonds.

At the same session the board appointed county agents as to this railroad, and required *them to attend the meetings of stockholders, election of officers, and to represent the county "as a stockholder."* The clerk issued certificates of appointment to the county agents and they were paid by the county for their services. At the session of March, 1858, the board appointed a fiscal agent to manage the sinking fund on " railroad bonds;" and in the following September appointed a committee to estimate the amount of money for the current year, required to pay interest on county bonds " issued for railroad purposes." The committee reported that $350 was needed to pay interest on $4500 of these bonds.

At the session of March, 1858, it was ordered that the claim of Graham, one of the agents of the county as to the Mississippi and Wabash Railroad Company, for services as such agent, be paid, and at the September session, 1859, that the county treasurer pay " the interest on the Fulton bonds," and without any reservation of the bonds in suit, and at the September session, 1860, that the county treasurer pay all coupons presented prior to March, 1861, and from June, 1861, purchase as many bonds, at not exceeding sixty cents of the dollar, as the sinking fund would pay.

In September, 1865, the board paid two of the bonds at a discount, protesting, however, against liability upon them.

On the 13th of September, 1866, the board ordered payment of two more of the bonds *in full,* upon the recommendation of the finance committee, and their statement that *"they entertained no doubt that they ought to be paid,"* and the bonds were surrendered.

On the next day, however, the board, by order, reconsidered the vote ordering payment, and finally refused to pay the bonds.

The present action was brought on fifteen bonds issued by the clerk of the County Court of Fulton County, acting as clerk of the board of supervisors of that county to the Central Division of the Mississippi and Wabash Railroad Company, and on the coupons annexed to said bonds.

The declaration contained special counts on the instruments, and also the common counts. The defendants pleaded the general issue, and judgment passed in their favor. The plaintiff below brought the case here on writ of error.

*Messrs. O. H. Browning and O. C. Skinner, for plaintiff in error,* relied largely on the fact which they asserted, and which they relied on as not disproved, that the bonds were in the hands of innocent holders for value; and that whether regularly issued originally or not, they had been ratified by the county in so many different ways, so advisedly and so unequivocally, that irregularity could not now be set up.

*Mr. S. Corning Judd, contra.*

Mr. Justice FIELD delivered the opinion of the court.

The questions presented for our consideration are, *first,* whether the bonds issued by the clerk of the County Court of Fulton County to the Central Division of the Mississippi and Wabash Railroad Company were, at the time of their issue, valid obligations of the County of Fulton; and, *second;* if not thus valid, whether they have become obligatory upon the county by any subsequent ratification.

Were they valid when issued? The answer depends upon the law of Illinois then in force. The clerk of the County Court possessed no general authority to bind the county.

He was a mere ministerial officer of the board of supervisors; and that body was equally destitute of authority in this particular, except as the law of Illinois gave it. That law authorized any county of the State, and, of course, its supervisors, who exercised the powers of the county, to subscribe stock to any railroad company in a sum not exceeding one hundred thousand dollars, and to pay for such subscription in its bonds, provided such subscription was previously sanctioned by a majority of the qualified voters of the county at an election called for the expression of their wishes on the subject, and it prohibited any subscription or the issue of any bonds for such subscription without such previous sanction. "No subscription shall be made or purchase bond issued by any county," says the law, "unless a majority of the qualified voters of such county . . . shall vote for the same." And the law further requires that the notices calling for the election "shall specify the company in which stock is proposed to be subscribed."

These provisions furnish the answer to the first question presented. The only subscription authorized by the voters of Fulton County was that to the Mississippi and Wabash Railroad Company, and one to the Petersburgh and Springfield Company. The Central Division of the Mississippi and Wabash Railroad Company was a different corporation from the original company. It has been so held by the Supreme Court of Illinois in a case involving the consideration of a portion of the bonds in suit and the remaining sixty thousand dollars of bonds of the original subscription.

The amendatory act of 1857 dividing the road into three divisions, and subjecting each division to the control and management of a different board, clothed with all the powers of the original board, so far as the division was concerned, worked a fundamental change in the character of the original corporation, and created three distinct corporations in its place. A subscription to a company whose charter provided for a continuous line of railroad of two hundred and thirty miles, across the entire State, was voted by the electors of Fulton County; not a subscription to a company whose

line of road was less than sixty miles in extent, and which, disconnected from the other portions of the original line, would be of comparatively little value.

But it is earnestly contended that the plaintiff was an innocent purchaser of the bonds without notice of their invalidity. If such were the fact we do not perceive how it could affect the liability of the County of Fulton. This is not a case where the party executing the instruments possessed a general capacity to contract, and where the instruments might for such reason be taken without special inquiry into their validity. It is a case where the power to contract never existed—where the instruments might, with equal authority, have been issued by any other citizen of the county. It is a case, too, where the holder was bound to look to the action of the officers of the county and ascertain whether the law had been so far followed by them as to justify the issue of the bonds. The authority to contract must exist before any protection as an innocent purchaser can be claimed by the holder. This is the law even as respects commercial paper, alleged to have been issued under a delegated authority, and is stated in the case of *Floyd Acceptances.** In speaking of notes and bills issued or accepted by an agent, acting under a general or special power, the court says: "In each case the person dealing with the agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards; for it is to be kept in mind that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued."

It is also contended that if the bonds in suit were issued without authority their issue was subsequently ratified, and various acts of the supervisors of the county are cited in support of the supposed ratification. These acts fall very far short of showing any attempted ratification even by the

---

* 7 Wallace, 676.

supervisors. But the answer to them all is that the power of ratification did not lie with the supervisors. A ratification is, in its effect upon the act of an agent, equivalent to the possession by him of a previous authority. It operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally. It follows that a ratification can only be made when the party ratifying possesses the power to perform the act ratified. The supervisors possessed no authority to make the subscription or issue the bonds in the first instance without the previous sanction of the qualified voters of the county. The supervisors in that particular were the mere agents of the county. They could not, therefore, ratify a subscription without a vote of the county, because they could not make a subscription in the first instance without such authorization. It would be absurd to say that they could, without such vote, by simple expressions of approval, or in some other indirect way, give validity to acts, when they were directly in terms prohibited by statute from doing those acts until after such vote was had. That would be equivalent to saying that an agent, not having the power to do a particular act for his principal, could give validity to such act by its indirect recognition.*

We do not mean to intimate that liabilities may not be incurred by counties independent of the statute. Undoubtedly they may be. The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. But this is a very different thing from enforcing an obligation attempted to be created in one way, when the statute declares that it shall only be created in another and different way.

We perceive no error in the record, and the judgment of the Circuit Court must, therefore, be AFFIRMED.

---

* McCracken *v.* City of San Francisco, 16 California, 624.