BAILEY and others vs. THE CITIZENS' GAS LIGHT COM-
PANY and others.

1. While negotiations were pending between two gas companies for their
consolidation, upon a certain basis of indebtedness, one of the companies
passed a resolution, without the knowledge of the other, declaring a scrip
dividend of ten per cent. on the amount of their capital stock, with in-
terest, payable at the option of the company, thus increasing their indebt-
edness to that amount.    Certificates of indebtedness were issued in accord-
ance with the resolution.    Consolidation was effected between the com-
panies without any knowlege of the other company as to such resolution and
such increased indebtedness.    Upon bill filed for that purpose, the scrip
was declared void, and the company issuing it was restrained from recog-
nizing the scrip as a valid obligation, and from permitting its transfer.

2. Such certificates should have put the purchaser thereof upon inquiry,
and they are not, therefore, within the rule applicable to negotiable paper.
Though purchased without knowledge of its character on the part of the
purchaser, and without inquiry, they were ordered to be delivered up to
be canceled.

3. In view of the delay in seeking relief against such scrip, and of the pos-
sible hardship, the parties who had received interest on the scrip being
numerous, and most of them having no knowledge of any wrong in the
creation of the scrip, and having received the interest as their just due, no
account of the interest was ordered.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. W. S. Whitehead,* for complainants.

*Mr. Joseph Coult,* for the company.

*Mr. W. H. Francis,* for M. L. Smith.

THE CHANCELLOR.

The facts of this case may be briefly stated.    Between The
Citizens' Gas Light Company, a corporation located at New-
ark, and existing under a special charter of this state, and The
Orange Gas Light Company, a corporation located at Orange,

in this state, and existing under a like charter, negotiations were commenced in the latter part of the year 1870, looking to their consolidation. They resulted in an arrangement, made in May, 1871, for the purchase by the former company of the stock of the latter, at a valuation of $131,000, to be paid for in the stock of the Citizens' company to the same amount, the Orange company agreeing to purchase, at par, $25,000 of the stock of the Citizens' company, to enable the latter to defray the expense of making the connection between their mains in Newark and those of the Orange company. In the negotiations which resulted in this arrangement, the committee of the board of directors of the Citizens' company, by whom the negotiations were conducted, represented to the like committee of the Orange company, that the indebtedness of the former company was only a convertible bond debt of $150,000. Pending the negotiations, and after the making of this representation, the board of directors of the Citizens' company, without the knowledge of the committee of the Orange company, or of their principals, passed a resolution, by which they declared a scrip dividend of ten per cent. on the amount of their capital stock, with interest from the 1st day of April, 1871, payable at the option of the company. The fact of the creation of this additional indebtedness of the company (for such it was, in effect,) was not only not communicated to the Orange company, but, on the other hand, was concealed from them, and the negotiations were concluded and an arrangement made as above stated, which was carried out in good faith on the part of the Orange company, in entire ignorance of the resolution in question, or of the dividend, or of the existence of any debt beyond the $150,000 stated, in the representations above mentioned, to be the entire indebtedness of the company, on the faith of which representations the Orange company relied.

The scrip dividend so declared, amounted to the sum of $51,225. The Citizens' company had, before the commencement of the negotiations, issued capital stock to the full amount authorized by their original act of incorporation.

They were, by the supplement passed to authorize the consolidation, empowered to increase their stock, but only so far as might be necessary for the purpose of consolidation. They not only had no legal authority for declaring this dividend, but there was no ground or warrant in the situation of their affairs for so doing. It appears that, from the beginning of their business up to May 1st, 1871, (the resolution was passed on the 10th of April preceding that date,) their expenses in manufacturing gas, &c., amounted to $50,901.30, while the amount received for gas in the same period was only $38,160.35.

The scrip was issued pursuant to the resolution. The certificates were merely certificates of the indebtedness of the company, therein declared to be payable at the pleasure of the company, with interest at the rate of seven per cent. per annum.

The bill was filed against the Citizens' company and the holders of the scrip, for a decree to declare the scrip void, as being fraudulent and illegal, and to restrain the company from paying interest on or recognizing the scrip as a valid obligation, and from permitting the transfer thereof. The bill prays, also, that the holders of the scrip may be enjoined from transferring it, and may be required to deliver it up to be canceled, and that the company may be required to cancel it, and that the persons who have received interest on it may account for it to the company.

The company, by their answer, state that they are now under the management of a board of directors composed of persons, none of whom except two were of the board by which the resolution declaring the scrip dividend was passed, and disclaim all knowledge of the transaction in question, or any information except from their minutes. None of the holders of the scrip, except Morgan L. Smith, have answered. He alleges, and has proved, that he is a *bona fide* holder of scrip to the amount of $510, which he purchased in January, 1872, from one of the directors, who then transferred it to him, and that subsequently he, having relinquished for cancellation the

certificate assigned to him, obtained a new one instead thereof, in December, 1872. He appears to have had no information as to any illegality or irregularity in the issuing of the scrip, and to have paid $510 for the certificate which he purchased.

There can be no doubt as to the right of the complainants to relief. They file their bill for the benefit of themselves, and of all other stockholders of the Orange company at the time of the consolidation. They are still holders of stock received by them in the consolidation in exchange for stock then held by them in the Orange company. The scrip dividend was a palpable fraud upon the stockholders of the Orange company. The directors of the Citizens' company, after making a representation to the Orange company as to the indebtedness of their company, to induce them to agree to a plan for consolidation, secretly created an interest-bearing indebtedness of $51,225 to themselves and to other stockholders of their company. Nor do they attempt to defend the transaction. As before stated, none of the holders of the scrip have answered, except Mr. Smith, and the bill has been taken as confessed as against them accordingly. Justice demands that at least those to whom the certificates were originally issued, and who still hold them, should be required to deliver them up for cancellation. Where a contract has been induced by false representations, or a transaction is in any way tainted by fraud, and the defrauding party is a party to the transaction, the transaction will be set aside, or the defrauding party will be compelled to make his representation good. It is obvious that there can be no rescission of the contract here without great loss and injury to both parties.

The only question is, whether Mr. Smith, a *bona fide* purchaser of the scrip for value without actual notice, will be protected in his purchase. That the company had no lawful authority for issuing the certificates, cannot be doubted. Had a purchaser of any of these certificates made inquiries as to their origin, he would have discovered that they had been issued contrary to law. Nor would he have found any-

thing in the situation of the affairs of the company to have warranted the board in issuing them. The rule which is applied to negotiable commercial paper is not applicable to such certificates as these. *Mechanics' Bank* v. *N. Y. and N. H. R. R. Co.*, 13 *N. Y.* 599 ; *Marsh* v. *Fulton County*, 10 *Wall.* 676. On its face the scrip bears evidence of its unusual character. It declares that the person to whom it is issued is entitled to a certain sum of money therein mentioned, payable, ratably with other certificates issued pursuant to the resolution of April 10th, 1871, at the pleasure of the company, with interest at the rate of seven per cent. per annum. No warrant for this scrip would have been found in the charter, and the reference to the prohibitory limitation contained in the act concerning corporations would have removed all question, and would have been decisive against its validity. *Charter, Laws of* 1868, *p.* 398 ; *Revision, title Corporations*, § 3 ; *Green's Brice's Ultra Vires* 147. That the purchaser bought it without inquiry, will not protect him in his purchase, and bind the company to perform an obligation made without authority and in defiance of law. *The Floyd Acceptances*, 7 *Wall.* 667. Nor is the defence of the purchaser in this case strengthened by the fact that the certificate which he purchased was delivered up to the company and another issued to him in its stead. A novation of the contract was just as much beyond the power of the officers of the company as was the creation of the obligation originally. Nor will the stockholders be estopped by such action on the part of the officers. *Marsh* v. *Fulton County*, *supra*. The certificate held by Mr. Smith must also be delivered up to be canceled.

It appears that the fact that the scrip had been issued came to the knowledge of Mr. Charles A. Lighthipe and Mr. Blake, two of the committee on the part of the Orange company, very soon after the arrangement between the companies had been concluded. The former gentleman held the certificate of the Citizens' company for the stock issued in exchange for the stock of the Orange company. No legal action was taken

for relief until the filing of the bill in this cause, in April, 1875. At the hearing, the account for interest paid to the holders of the scrip was not insisted upon. The scrip is held by very many persons, most of whom had no knowledge of the existence of any wrong in the creation of it. They have, from time to time, received interest on it, believing it to be their just due. To require them to account might be a hardship. Under the circumstances, in view of the delay of the stockholders of the Orange company in applying for relief for so long a time after they had full knowledge of the facts, I shall not order an account.