## Floyd County v. Owego Bridge Company.

(Decided May. 16, 1911) '

### Appeal from Floyd Circuit Court.

1. Counties—Fiscal Courts—Abdication of Powers—The fiscal court of a county can not abdicate the powers conferred upon it by law, and invest a committee of private citizens with authority to prescribe the plans and specifications for bridges and fix the amount of money to be expended, and make the expenditure a liability upon the county.

2. Relief—While in such cases, the county is under no liability to pay, it will not be permitted to retain the bridges and not pay for them; but the contractor will be given the right to remove the bridges and all the material furnished in their construction.

JAMES GOBLE and W. LEE ROBERTS for appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, Owego Bridge Company, brought this action against Floyd county, the members of its fiscal court, and the fiscal court, to recover the contract price of three bridges which it had erected over certain streams in that county. On final hearing, judgment was rendered against the county, and it appeals.

It appears that the Floyd County fiscal court, at its regular October term, 1908, entered an order of record directing the building of two bridges involved in this litigation. One of these bridges was to be erected across Right Beaver Creek and one across John's Creek. The order appointed T. J. Craft, G. P. Archer and J. M. Weddington bridge commissioners to superintend the

construction, receive bids and let contract for the performance of the work. Under this order no action seems to have been taken. At its next regular term, which was held in April, 1909, the fiscal court entered the following order:

"Upon motion of T. J. Craft it is ordered that there be erected and completed a steel bridge upon stone or concrete abutments across the left fork of Beaver Creek at a point to be determined by the committee hereinafter named, and also one steel highway bridge to be constructed upon stone or concrete piers and abutments across John's Creek at the present ford of John's Creek at what is sometimes called the mouth of Brandy Keg and also one steel bridge to be constructed upon stone or concrete piers and abutments across the right fork of Beaver Creek near the residence of T. J. Craft at a point where a survey and sounding has been made by John McDyer, civil engineer.

"It is further ordered by the court that there be appropriated and there is hereby appropriated and ordered to be paid out of the county levy of Floyd county for the years of 1909 and 1910, one-half out of the levy for 1909 and one-half out of 1910 a sufficient amount of funds to erect and complete the aforesaid highway bridge across the left fork of Beaver Creek and also all the necessary approaches, fills and other ways thereto and there is appropriated and hereby ordered to be paid out of the county levy of Floyd county for the year 1910 a sufficient amount of funds for the construction and completion of the aforesaid highway steel bridge, piers, abutments, fills, approaches and ways thereto across John's Creek and there is hereby appropriated and ordered paid out of the county levy of Floyd county for the year, 1911, a sufficient amount of funds to complete the aforesaid steel highway bridge, piers, abutments and all necessary approaches, grades and ways thereto across the right fork of Beaver Creek.

"It is further adjudged by the court that J. M. Weddington, T. J. Craft and George P. Archer be and they are hereby appointed this court's committee for the purpose of receiving estimates and bids for the construction of each and all of said bridges, and they are hereby authorized and empowered to make, enter

into and conclude all necessary contracts and agreements for the erection and completion of any and all of said bridges and they are hereby authorized to make final and complete settlement for any one or all of the said bridges and they will report their acts hereunder to this court.

"It is further ordered and adjudged by the court that the said committee shall not make or enter into any contract for the erection or completion of any one of said bridges without first having obtained from the landholders on both sides of the creek all necessary ease-ments and rights of way for the construction and com-pletion of said bridges and they may procure such sur-veys, profiles and blue prints and specifications as may be necessary for the advancement and promotion of said work and to do and perform any and all acts necessary to the successful transaction of said business and any two of said committee may act for the whole committee in the absence of any one member.

After the order was made and entered of record, the three commissioners, who, it seems, are among the best business men of the county (one a prominent far-mer and the other two cashiers of banks), began to take steps to carry into effect the order of the court. To this end they obtained rights of way over the lands of various land-owners on each side of the streams as sites for the approaches to the bridges; and on the 25th day of June, 1909, entered into three separate written con-tracts with appellee for the erection and completion of each of said bridges according to certain plans and specfications. Before letting the contracts the commis-sioners advertised the time and place at which they would receive bids and let the contracts, by written no-tices posted throughout the county, in public places and upon the county court house, and by correspondence with all the leading bridge and construction companies throughout the country, and by advertisement in the Manufacturers' Record, of Baltimore, Maryland. The bids were sealed, and, upon the day fixed for opening them, there were some fifteen or twenty bridge compan-ies represented. Upon examination, it was found that appellee was the lowest and best bidder on both the sub-structure and superstructure of each bridge. At this time both the county judge and the county attorney were present and advised with the three commissioners.

After the execution of the contracts appellee proceeded with the work with the knowledge of the members of the fiscal court. The work was not completed until the winter and spring of 1910. In the meantime there was a change in the personnel of the court, the new members having taken office the first Monday in January, 1910.

While it is claimed by the commissioners that they made to the fiscal court verbal reports of the progress of the work, the record of that court is absolutely silent upon this point. After the work was completed and the commissioners had obtained deeds to the rights of way and approaches to the various bridges, they appeared in the fiscal court and offered to file a written report pursuant to the order of that court, stating, in substance, that the work had been well performed and that the appellee ought to be paid the contract price for all the bridges, and recommending that orders of allowance be made in accordance with the contracts. At the same time they filed with their report deeds from the various land-owners to the rights of way and approaches to the bridges. The fiscal court refused to allow the commissioners' report to be filed, and also refused to allow appellee anything for the work it had done. It further declined to accept the bridges.

According to the terms of the contract, the bridge across Left Beaver Creek cost $5,210.00; that across Right Beaver Creek, $4,660.00, and that across Johns Creek, $5,758.00; making in all the sum of $15,628.00. It seems to be conceded that the bridges were built according to contract, and there is no complaint, either of the amount expended or the character of the work done.

The sole grounds upon which the county resists the payment of appellee's claim are (1) that the order appointing the commissioners, directing the construction of three bridges, and conferring upon them the powers therein set forth, was void; and (2) the debt created by the three contracts was incurred in violation of section 157 of the Constitution.

An examination of the order hereinbefore set out will show that it conferred upon the three commissioners the power to select the location of the bridge across Left Beaver, the power to make contracts for all three of the bridges and determine what sum the county should

pay for each, the power to obtain all easements and rights of way and fix the amount the county should pay for them, and the power to make final and complete settlements with the contractor. In other words we have a case where the official court which alone is clothed with the power to contract for the county, has completely abdicated its power and turned it over to a committee, with full rein to construct one of the bridges wherever they pleased, and to determine the height and width of the bridges, and to expend any amount of money, in their discretion, and to make it a liability on the county. The general rule is that fiscal courts or other county boards having charge of county affairs, may, in the exercise of the powers conferred upon them, appoint agents to discharge ministerial duties not calling for the exercise of reason or discretion, but can not go beyond this and delegate to others the discharge of duties which call for reason and discretion and which are regarded as public trusts. (House v. Los Angeles County, 104 Cal., 73; Scollay v. Butte County, 67 Cal., 247.)

But, it is insisted for appellee that the act of building bridges is purely ministerial and not judicial; and that, therefore. the fiscal court could lawfully confer the power given in the order referred to. The principle, however, is not restricted merely to judicial acts; it applies to all acts which involve the exercise of discretion; it matters not whether they be considered ministerial or quasi legislative. In the case before us the commissioners were not directed merely to see to the execution and carrying out of contracts which the fiscal court had directed to be executed, but they were given unlimited power to determine the amount of the expenditure. In reaching the conclusion as to the requisite amount the commissioners necessarily exercised a discretion, and a discretion which the fiscal court alone could exercise. If the order in question could be held valid to the extent of appellee's claim in this case, it could, for the same reason, be held valid even had the expenditure amounted to $50,000.00 or $100,000.00. In a case like this, it is immaterial whether the work is well done or not, or whether the bridges are of the same character as the fiscal court itself would have selected; or whether the commissioners did better for the county than the fiscal court would have done. If the commissioners were without authority to contract for the bridges, and the fiscal

court has never ratified or approved the contracts which it made, or accepted the bridges, it follows that the contractor can not legally demand the payment of the contract price.

While this conclusion results in a great hardship to appellee, it is nevertheless a hardship which falls to every one contracting with a municipal corporation, who fails to inquire into the power of the corporation, or its officers, to make the contract. The rule is that all persons must take notice that a county can contract only in the manner and by the persons and for the purposes expressly provided by the statute; and those dealing with a county or other municipal corporations do so at their peril. (Trustees of Bellevue v. Hohn, 82 Ky., 1; Perry County v. Engles, 116 Ky., 494.)

But, we are asked to say that equity demands that we should hold that the county, having received the benefit of appellee's work and acquired the bridges should be required to pay for them. To apply such a rule would be to disregard entirely all the principles of law applicable to counties or municipal corporations. In every case then liability would be imposed upon the county, it matters not how it may have been created, for it could always be said that it received the benefit of the work or material furnished.

The rule announced in Milliken v. Gillum, 135 Ky., 280, does not apply to this case. There the bridge was accepted by the county. Here the county refused to accept the bridge or in any way approve or ratify what the commissioners had done. The mere fact that the county accepted the deeds for all the rights of way and approaches, did not constitute an acceptance of the bridges.

However, there is a rule which is applicable to this case. As was said by the Supreme Court of the United States in Marsh v. Fulton County, 10 Wall., 676, the obligation to do justice rests upon all persons, natural and artificial, and if a county obtain money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. Under this rule, Floyd county will not be permitted to retain the bridges and not pay for them. Appellant having declined to pay for the bridges, appellee will be permitted to remove the bridges and all the material which it furnished in their construction. This is the only remedy the law affords appellee. (City of Bardwell v.

Southern Engine & Boiler Works, 130 Ky., 222, Floyd County v. Allen, 137 Ky., 534.)

Judgment reversed, and cause remanded with directions to enter judgment in conformity with this opinion.