SNOUFFER & FORD, Appellants, v. CITY OF TIPTON, IOWA, and W. A. GROVE, et al., Appellees.

**Injunction:** ISSUANCE: STATUS QUO. An injunction should not be
1 granted where the effect will be to transfer the possession of property from one party to another, or to otherwise interfere with the *status quo.* Thus where plaintiffs had constructed a street pavement which had not been paid for, a temporary injunction restraining the city from interfering by criminal process, or otherwise, with the tearing up and removal of the pavement should not be granted; it appearing that the injunction would permit a change in the *status* of the parties pending a settlement of their rights.

**Same:** RESTRAINT OF CRIMINAL PROCEEDINGS. Ordinarily courts of
2 equity will not restrain criminal or *quasi* criminal proceedings, except where plaintiff's property would otherwise be placed in jeopardy, or taken without due process of law, and possibly in some other instances.

**Judgments:** MATTERS CONCLUDED THEREBY. Neither a judgment deny-
3 ing recovery on a contract for street pavement, nor one denying

recovery upon *quantum meruit* for the same work, are conclusive
as to the ownership of the material entering into the pavement,
and of the right of the contractor to remove the same; as the
title and ownership of the material could not have been litigated in
those actions.

**Personalty:** ANNEXATION TO REALTY: REMOVAL: FIXTURES. As a gen-
eral rule one who furnishes material to be paid for when accepted
by the buyer, may, upon refusal to accept and pay for the same,
rescind the contract and recover back the material, even though
it has been annexed to and become a part of real property, if
it can be removed without material injury to the realty; for it is
competent for the buyer and seller of personal property to make
any agreement they may see fit, regarding personalty which is to
be so annexed, although as to third persons its annexation may
convert it into a fixture which cannot be removed.

**Municipal Corporations:** STREET IMPROVEMENT: LIABILITY OF CITY
AND ABUTTING OWNERS. Where a city and abutting property owners
refused to accept and pay for a street pavement on the ground
that it was not in compliance with the contract, they were not
obligated to reject or offer to return it. Nor could they be held
liable therefor on an implied contract, or upon *quantum meruit*,
because of the use of a pavement which did not comply with the
contract for its construction. Nor were the abutting owners liable
for a conversion of the pavement by reason of a sale of their
property without excepting the improvement from the covenants of
warranty.

**Same:** NON-COMPLIANCE WITH CONTRACT: REMOVAL OF PAVING MATERIAL.
Where a municipal contractor failed to do the paving according to
his contract, and after a denial of recovery for the contract price
he offered to remedy defects, but the city failed to point out the
defects which should be remedied, and he was thereafter also
defeated in an action upon *quantum meruit*, he was entitled to
remove the paving if it could be done without substantial injury
to the street.

**Same:** LIMITATION OF ACTIONS: LACHES. The statute of limitations,
as affecting the right of the contractor to remove the paving after
adverse suits for the contract price and upon *quantum meruit*, was
tolled by the prosecution of such suits; and the contractor's right
to remove the pavement was not barred by laches, where the work
of removal was commenced within four months from the termina-
tion of the litigation.

**Same.**   Where payment of a paving contract was refused by the city
solely on the ground that the work was not done in accordance with
the contract specifications, a provision of the contract that in case
the contractor abandoned the work, or if the city engineer should
certify that it was being unnecessarily delayed, the security might
be forfeited and the material delivered and built into the work
should become the property of the city, could not be relied upon
by the city to prevent removal of the material by the contractor,
in the absence of any showing that the city had acted upon such
provision.

*Appeal from Cedar District Court.*—HON. F. O. ELLISON,
Judge.

SATURDAY, JUNE 7, 1913.

SUIT in equity, to enjoin the defendants, the City of Tipton, the County of Cedar, and the officers of each, including the County Attorney, City Solicitor, the County Sheriff, and certain private citizens, from prosecuting, either civilly or criminally, or from interfering in any way with plaintiff, its agents or employés, in removing a certain pavement and gutter and paving and guttering material, laid in the streets of the defendant city by the plaintiffs herein. A temporary writ of injunction issued as prayed, which upon motion was afterwards dissolved; and certain of the defendants filed demurrers to the original petition, and an amendment thereto, and these demurrers were also sustained, and plaintiffs' petition was dismissed. Plaintiffs appeal.—*Affirmed* in part, and *reversed* in part.

*Redmond & Stewart,* and *R. R. Leach,* for appellants.

*C. O. Boling* and *France & Rowell,* for appellees.

DEEMER, J.—This seems to be the last case of a series which have come to this court, involving the construction of a curb and gutter and a certain pavement in the city of Tipton. The first of these cases involved the question as to whether or

not the improvement was completed according to contract, and the right of the city to issue assessment certificates to the contractor on account thereof. This court held that the work had not been completed according to contract, and that abutting property should not be assessed with the cost thereof. See *Wingert v. City of Tipton,* 134 Iowa, 97. It should be remarked parenthetically that plaintiff reported the work as completed some time in October of the year 1903. Failing to secure its assessment certificates, plaintiff brought a suit in which they sought to have a lien established against property abutting upon the streets which had been paved, to the amount of the value of such improvement, and in this they failed. See *Snouffer & Ford v. Grove, et al.,* 139 Iowa, 466. They then commenced an action on the *quantum meruit* against the city and others, and, as part of the relief prayed, asked that a lien be established against the improvement for the value thereof, and this action also failed. See *Snouffer & Ford v. City of Tipton,* 150 Iowa, 73. In each and all of these cases plaintiffs asserted that they had performed the work according to contract. In one of them, plaintiffs averred that they had offered to reconstruct the pavement to make it comply with the terms of the contract, but in that it was held that the offer came too late. The result has been that the plaintiffs have received nothing for the improvement constructed by them, and this improvement has remained in the city streets since it was originally constructed; neither the plaintiff nor the city doing anything toward remedying the defects, which, this court held, existed therein.

The facts with reference to this prior litigation, the pleadings, decrees, and records of the testimony taken therein are set out in the petition filed in this case, and, in addition thereto, plaintiff, among other things, alleged:

Par. 6. That the contract by its terms provided that reconstruction of the work might take place at any time before it was paid for, and provided also that the defendant city might reconstruct and charge back the expense thereof to the

plaintiff, and the city council itself, by resolution, after the commencement of said action, deferred further consideration of assessment and payment for said work by the adoption and approval of the following record: 'The matter of the assessment of paving under the Snouffer & Ford contract and the issuance of certificates against abutting property therefor was deferred pending the hearing and decision upon the injunction restraining the city council from assessing said paving or the issuing of certificates, issued in the case of F. D. Wingert and others v. City of Tipton et al., by district court of this county, until such time as said injunction is dissolved or finally heard and then the matter of the assessment of said paving and issuing of certificates shall be taken up at the first regular meeting after the dissolution or disposition of said injunction or on a specially called meeting therefor.' That at the next regular meeting of the city council of the defendant city, held after the announcement of the opinion of the Supreme Court in the case of *Wingert v. City of Tipton*, held on October 1, 1906, and at the following regular meeting thereof in the same year, the plaintiff in this case offered both orally and in writing to reconstruct the pavement up to the strict requirements of the contract, but the city council ignored the offer and did nothing. This plaintiff, under the contract aforesaid, as according to its terms and under the construction thereof theretofore adopted by both this plaintiff and said city, could do nothing toward reconstruction of said pavement without inspection, supervision, direction, and co-operation of the defendant city and its officers. This offer to reconstruct was made after the filing of said opinion, but before any decree of injunction or other remedy had been rendered or entered in the Supreme Court in said cause, which decree was in fact entered on the 12th day of December, 1906.

Par. 7. Thereafter, the plaintiff sought to recover on *quantum meruit* from some of the abutting property owners on said portions of Meridian and Fourth streets, and also sought to recover so much as said pavement was worth from the city, but was defeated in both of said forms of action.

Par. 8. Thereafter, the plaintiff caused to be served by the sheriff of Cedar county, Iowa, on each member of the city council of the defendant city of Tipton, and mayor thereof, a notice in writing to the effect that, in view of the failure

of the city to accept and pay for the pavement or to allow plaintiff to reconstruct or remedy the defects therein, it would, with as little disturbance to public travel and convenience as possible, and without disturbing the grade or the parking, proceed on the 8th day of May, 1911, to remove the pavement and curbing from the streets. It also averred that:

At the first regular meeting of said council in May, 1911, it read the said notice to said council in session, by and through its attorney, R. R. Leech; and the plaintiff, prior to the service of said notice, orally notified the said mayor and said councilmen that it would take up and remove said pavement and curbing, and expeditiously, and not to interfere thereby with travel upon the streets, and would leave said streets upon which paving had been laid by it as aforesaid in as good or better condition than they were before Snouffer & Ford began the work of putting down said pavement, and that all of the same could be done without material injury to said streets. That in truth and in fact said removal of said paving and curbing can be accomplished without material inconvenience to the use of said streets and without material injury to the streets themselves, and the removal will leave said streets in substantially as good condition, or better, than they were before the pavement and curbing aforesaid was placed thereon.

Par. 9. That pursuant to said notices, the plaintiff and its employees commenced on the 8th day of May, 1911, to remove the said pavement and curbing, but the defendant city, acting through its officers and agents for and on behalf of said city, and some of the property owners made defendants herein who owned property abutting on said paved and curbed streets, arrested the men engaged in said removal for a violation of section 4703 of the Code of Iowa; and again, on or about May 23, 1911, when said work of removing was resumed, repeated said arrest, and again threaten to arrest the plaintiff or any of its employees who may attempt to or start upon said removal, and in this manner and ways the defendant city of Tipton and some of the other defendants, the plaintiff cannot specify them, through the officers and agents of said defendant city and the county of Cedar, refuse to permit the plaintiff to remove said paving and curbing as proposed, and have interfered with and threaten to interfere with and prevent said

removal of said paving and curbing by the plaintiff and its employees.

Par. 10. That the defendants and none of them have paid anything for said pavement and curbing. That said pavement and curbing is the property of plaintiff. That the defendants have failed and refused to accept said pavement and curbing as in compliance with the contract aforesaid, and have failed and refused to reconstruct the pavement and curbing to comply with the terms of said contract and charge the expense thereof to the plaintiff as said contract provides they might do; and on the proposal and offer of the plaintiff, as under the terms of said contract it might before final payment for said pavement and curbing, to reconstruct said pavement to the full requirements of said contract and asking the supervision and approval of said reconstruction by the officers of said city, as plaintiff was bound to do, the defendant city and its officers refuse and neglect to do anything or to permit said reconstruction, and all defendants have failed and refused to pay anything for said pavement and curbing, and refuse to permit, and prevent the taking up and removal of the same and it is their expressed purpose and intention so to do.

Par. 11. The plaintiff has no plain, speedy, or adequate remedy at law, and will suffer irreparable injury if delayed in the taking up of said pavement and curbing and will be harassed and annoyed by a multiplicity of suits, criminal and civil, without just or legal ground therefor.

In amendment to the petition plaintiff alleged:

Par. 12. That the purpose of filing the information and prosecutions against the plaintiff and its employees, as alleged, was to prevent the removal of said paving and curbing by the plaintiff and its employees, and in an action in the Cedar county district court, styled E. Barr v. Brady Piatt, Sheriff, in which the said E. Barr, one of the employees of this plaintiff, had been arrested as alleged in the petition herein, was discharged on the hearing in habeas corpus from said arrest, and therein said prosecutions were held to be without merit, and by reference the judgment, finding, and decree of the court in said cause, filed in the Cedar county district court on or about June 3, 1911, is made a part of this amendment and petition without setting out the same in full herein.

And, after pleading all the proceedings in the cases, to which we have referred, they further stated that:

By reason of said suits and the records therein, and other ways, the defendants had actual and constructive notice and knowledge of the fact that Snouffer & Ford had constructed said pavement and curbing, that it was unpaid for and unassessed, and that Snouffer & Ford were contending and seeking to recover compensation therefor, and that in that way and manner the said Snouffer & Ford claimed to own the pavement and curbing all since the time it was constructed by Snouffer & Ford to the present time.   .   .   .

The prayer was not only for an injunction, but also for general equitable relief.

As already indicated, a temporary writ of injunction was issued, which was dissolved upon motion, and some of the defendants demurred to the petition as amended, and the demurrers were sustained. The appeal challenges the correctness of the rulings on the motion to dissolve and also on the demurrer to the petition as amended.

I. We are well satisfied with the ruling on the motion to dissolve the temporary writ. It was granted without notice, and the effect thereof would have been to permit plaintiffs to proceed with the removal of the pavement and curbing without let or hindrance, before a hearing upon the merits of the controversy. By the time the case could reasonably have been brought on for hearing on the merits, the improvement would have been removed and it could not have been replaced; nor could the damages done by the removal thereof, in the event it were found the removal was wrongful, well have been measured by any known scale.

1. INJUNCTION: issuance: status quo.

While courts have large powers in the matter of issuing writs and processes, they should exercise great care in granting temporary writs of injunction against the usual and ordinary processes of the law. Ordinarily these writs are to preserve the *status quo* or to save the plaintiff from great injury,

which might arise before a trial upon the merits. There is no showing that plaintiff would suffer any damages by allowing the improvement to remain in the condition it was when the petition was filed, and, as a general rule, until it is found that one is entitled to the possession of property, the title to which is in dispute, a temporary writ which will transfer the possession from one to the other, or otherwise interfere with the *status quo,* will not be allowed. *Hall v. Henninger,* 145 Iowa, 230; *Railroad Co. v. Railroad Co.,* 116 Iowa, 681; *Railway Co. v. Railway Co.,* 142 Iowa, 459; *Wingert v. City,* 134 Iowa, 97; *Chamberlain v. Brown,* 144 Iowa, 601.

Again, it is unusual for courts of equity to restrain either criminal or *quasi* criminal proceedings. *Home Bank v. Hicks,* 116 Iowa, 114; *Ewing v. Webster City,* 103 Iowa, 226. Excep-

2. SAME: re-    tions are made in cases where plaintiff's prop-
straint of    erty would be placed in jeopardy, taken with-
criminal pro-
ceedings.    out due process of law, and perhaps in some
others. *Vide, Dobbins v. Los Angeles,* 195 U. S. 223 (25 Sup. Ct. 18, 49 L. Ed. 169); *Brewing Co. v. Superior,* 117 Wis. 297 (93 N. W. 1120); *Austin v. Austin Cemetery Ass'n,* 87 Tex. 330 (28 S. W. 528, 47 Am. St. Rep. 114). But this case does not fall within any of these exceptions. The improvement has been a subject of contention for nearly ten years, and it has not yet been determined that plaintiffs are the owners of or are entitled to remove the same. In view of the facts appearing of record, the trial court was right in dissolving the temporary writ of injunction.

II. The demurrer to the petition as amended presents much broader and more doubtful propositions. It is the general equitable one, and the only means we have for determining the exact grounds thereof is to consult appellees' brief made for this appeal. The trial court filed no written opinion, but sustained the demurrers generally.

Among other things, defendants say that plaintiffs' right to the pavement and curbing has already been adjudicated

against them in some of the cases to which we have referred.

3. JUDGMENTS:
matters con-
cluded thereby.
But this cannot be so, for in none of the prior cases was there an issue as to who owned the material; nor were any of the parties, unless it be these defendants, contending that the improvement, or the materials of which it was composed belonged to the plaintiff. In all the prior actions, plaintiffs were seeking to recover either the contract price, or the market value of the improvement on the theory that it had been constructed for the defendants or some of them, under contract, or that it had been accepted and used by them or some of them, and that by reason of that fact they should pay either the contract price, or the market value thereof. They were also insisting that assessments against abutting property should have been made by the city authorities, as provided by statute, and that they had either complied with their contract, or, in one of the cases, that they were ready to do so. Each and all of the defendants interested in this controversy were insisting that they were not liable to pay for the improvement, and it is conceded that plaintiff has not been paid therefor. If defendants have any right thereto, it is not because of an adjudication giving them the title or because they have paid for the same, and there has been no finding in any of the prior cases as to where the title was, or now is. So that there is no merit in the claim of former adjudication. Plaintiffs could not, in any of the prior cases brought by them, have injected a claim to ownership of and right to remove the property. Such an issue would not have been germane to the issues then tendered, and plaintiffs are not therefore concluded by reason of the rule that an adjudication settles not only the issues expressly made, but also all other issues necessarily involved, or which might have been introduced into the case. An examination of these prior cases and of the issues presented and determined is the only citation that seems to be needed in support of our conclusion here.

Appellees say, however, that this improvement, which was

laid upon a public street, the fee title to which was in the city, was a permanent one, was intended to and did in fact become a part of the street, was so constructed as that it became a part of the realty and also an appurtenance to the abutting lots, and that for these reasons it cannot and should not be removed, even though the removal may be accomplished without injury either to the street or to the property owners. Both the city and the property owners have, at all times, refused to accept and pay for the improvement for the reason that it did not comply with the contract, and they have successfully contended that they cannot be held on *quantum meruit*.

The material going to make up the improvement belonged to plaintiffs, and they have not been paid therefor, so that, were they of the nature of personalty, they would ordinarily be removable. The close question here is whether or not, by reason of the nature of the improvement, plaintiffs are without remedy, or, in other words, have no right to reclaim their property. Incident to that are some collateral questions, as laches, the statute of limitations, election of remedies, and, plaintiffs' rights under the contract. Some of these matters will be discussed as we proceed.

As a general rule, one who furnishes goods or material to another, to be paid for when delivered and accepted by the vendee, may, in the event the vendee refuses to accept or pay for the goods, rescind the contract and recover

4. PERSONALTY: annexation to realty: removal: fixtures. 

back his goods; and this rule obtains even where the property is so annexed to land as to become a part thereof upon acceptance, provided the removal may be made without injury to the property to which it has been annexed. *Harrison County v. Smith,* 15 B. Mon. (Ky.) 155; *Perry County v. Engle,* 116 Ky. 594 (76 S. W. 382); *Marsh v. Fulton,* 10 Wall, 676 (19 L. Ed. 1040); *Louisiana v. Wood,* 102 U. S. 294 (26 L. Ed. 153); *Wrought Iron Co. v. Utica* (C. C.) 17 Fed. 316; *Lee v. Monroe County,* 114 Fed. 744 (52 C. C. A. 376); *Chapman v. Douglas*

*County,* 107 U. S. 348 (2 Sup. Ct. 62, 27 L. Ed. 378); *Fords-ville v. Postel,* 121 Ky. 67 (88 S. W. 1065, 123 Am St. Rep. 184).

Appellee relies, however, upon the thought that, as this property became permanently attached to the real estate, it was, although not accepted by the city or by any of the property owners, what the law denominates a fixture, and that it cannot be removed by the plaintiff.

5. MUNICIPAL CORPORATIONS: street improvement: liability of city and abutting owners.

Some confusion has arisen over the meaning of this term "fixture." As a rule, the question only arises where the party making the annexation is claiming the right to remove property which he had annexed to a freehold against a stranger to the original contract. In other words, the doctrine of fixtures applies, as a rule, to chattels annexed to a freehold in actions between vendor and vendee of the real estate, landlord and tenant, mortgagor and mortgagee, the seller of the fixture and a purchaser, mortgagee, or creditor of the freeholder. As a rule, the owner of land and the seller of personal property may make any agreement they choose regarding personal property to be annexed or attached to the land. *Tifft v. Horton,* 53 N. Y. 377 (13 Am. Rep. 537); *Taft v. Stetson,* 117 Mass. 471; *Melhop v. Meinhart,* 70 Iowa, 685; *Walton v. Wray,* 54 Iowa, 531; *Frey v. Brick Co.,* 104 Iowa, 494. A different question arises when rights of third parties intervene, and the subject of fixtures then becomes of great importance.

Neither the city of Tipton, nor the abutting property owners, ever accepted the pavement as being in compliance with the contract. On the contrary, they have, at all times, insisted that it was not constructed according to specifications, and they have persistently refused to pay. Of course, neither was obliged to reject the improvement or to offer to return the same. See *Exhaust Ventilator Co. v. R. R. Co.,* 69 Wis. 454 (34 N. W. 509), and cases cited.

Nor could they be held liable on an implied contract or

for *quantum meruit,* because of the use of the improvement. *Snouffer v. Grove,* 139 Iowa, 466; *Snouffer v. City,* 150 Iowa, 73.

And, following this rule to its logical conclusion, they could not be held liable for a conversion of the property in the event they sold their real estate without exempting the improvement from the covenants of warranty. *Bowe v. Frink,* 137 Iowa, 1.

While it may be that trover or conversion will not lie for fixtures annexed or for a refusal to permit their removal *Guthrie v. Jones,* 108 Mass. 191; *Overton v. Williston,* 31 Pa. 155; *Russel v. Richards,* 11 Me. 371 (28 Am. Dec. 532), yet it does not follow that the party making the improvement may not remove it, if he may do so without material damage to the street or to the property owner. These doctrines have been applied to improvements placed upon streets and highways and on city property. *Marsh v. Fulton,* 10 Wall. 676 (19 L. Ed. 1040); *Louisiana v. Wood,* 102 U. S. 294 (26 L. Ed. 153); *Chapman v. Douglas,* 107 U. S. 348 (2 Sup. Ct. 62, 27 L. Ed. 378); *Bardwell v. Southern Works,* 130 Ky. 222 (113 S. W. 97, 20 L. R. A. [N. S.] 110; *Floyd County v. Owego Bridge,* 143 Ky. 693 (137 S. W. 237).

6. SAME: non-compliance with contract: removal of paving material.

In *Marsh v. Fulton County, supra,* it is said: "The obligation to do justice rests upon all persons, natural and artificial, and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. But this is a very different thing from enforcing an obligation attempted to be created in one way, when the statute declares that it shall only be created in another and different way." This language is quoted with approval in the *City of Louisiana case, supra.*

In *Chapman's case,* the Supreme Court of the United States, adopting the language of the California court, said: "The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon

all persons, whether natural or artificial. If the city obtain
the money of another by mistake, or without authority of law,
it is her duty to refund it, from this general obligation. If
she obtain other property which does not belong to her, it is
her duty to restore it, or, if used, to render an equivalent
therefor, from the like obligation. *Argenti v. San Francisco,*
16 Cal. 282. The legal liability springs from the moral duty
to make restitution.''

In *Floyd County v. Allen,* the Court of Appeals of Ken-
tucky said:

It appears in this case, however, that appellee, when the
fiscal court refused to allow his claim, proposed to take the
material used by him in the construction of the bridge out of
the road and apply it to his individual use, and the fiscal court
refused him this privilege and threatened to have him prose-
cuted if he did so. This was wrong. While appellee, under
the statutes as construed, could not enforce his claim against
the county, it had no right to refuse to pay him for it and hold
the material furnished by appellee. He should have been per-
mitted to remove the material if he could have done so without
leaving the road in a worse condition than he found it when
he undertook to repair it; and, as he was refused permission
to take it, the county should pay him the reasonable market
value of the material at the place it was situated at the time
the fiscal court refused to allow him to take it, provided the
material could have been removed and left the road in as good
condition as when placed in the road. This equitable rule
should be and is applied in all cases where a party in good
faith, as appellee did in this case, furnished material and
erected an improvement on the property of another without
authority.

And in *Floyd County v. Owego Bridge Co.,* the same
court said:

But, we are asked to say that equity demands that we
should hold that the county, having received the benefit of
appellee's work and acquired the bridges, should be required
to pay for them. To apply such a rule would be to disregard

entirely all the principles of law applicable to counties or municipal corporations. In every case, then, liability would be imposed upon the county, it matters not how it may have been created, for it could always be said that it received the benefit of the work or material furnished. The rule announced in *Millikin v. Gillum,* 135 Ky. 280, (122 S. W. 151), does not apply to this case. There the bridge was accepted by the county. Here the county refused to accept the bridge or in any way approve or ratify what the commissioners had done. The mere fact that the county accepted the deeds for all the rights of way and approaches did not constitute an acceptance of the bridges. However, there is a rule which is applicable to this case. As was said by the Supreme Court of the United States in *Marsh v. Fulton County,* 10 Wall, 676, (19 L. Ed. 1040), the obligation to do justice rests upon all persons, natural and artificial, and, if a county obtain money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. Under this rule, Floyd county will not be permitted to retain the bridges and not pay for them. Appellant having declined to pay for the bridges, appellee will be permitted to remove the bridges and all the material which it furnished in their construction. This is the only remedy the law affords appellee. *City of Bardwell v. Southern Engine & Boiler Works,* 130 Ky. 222, (113 S. W. 97, 20 L. R. A. (N. S.) 110) ; *Floyd County v. Allen,* 137 Ky. 575, (136 S. W. 124, 27 L. R. A. (N. S.) 1125).

Again, in *Bardwell v. Southern Works,* the same doctrine is announced. To this case, reported in 20 L. R. A. (N. S.), there is a valuable note referring to practically all the questions upon the subject:

In sustaining the right of a builder of a bridge, erected under an invalid contract with the commissioners of a county, to remove the same because of nonpayment of the purchase price, the court, in *Lee v. Monroe County,* 52 C. C. A. 376, (114 Fed. 744), said: 'While the law affords no remedy, equity, although it will not enforce the contract or create a contract between the parties on account of the acceptance and retention of the property, when the property is in existence, and in the hands of the defendant, will not allow it to retain that to which it has no title whatever, and prevent the owner from

reclaiming it. The case presented by the bill shows no moral turpitude in the transaction, and, although the bridge company should have ascertained whether each step provided by the statutes had been properly taken, the law placed upon the defendant the duty of taking those steps. It was necessary for it to comply with every provision of the statutes in that behalf before entering into these contracts, and it represented to the bridge company that it had so complied, and thus misled the bridge company into entering into the agreement, the carrying out of which placed these bridges in the hands of the defendant. The complainant has no remedy at law, and to deny him equitable relief would be to enforce the contract on the part of the bridge company, and to allow the defendant to repudiate its part of the same contract and thereby appropriate, without compensation, property to which it had no legal or equitable right.'

Indeed, there seems to be no departure from these cases in any of the decisions to which our attention has been called. The nearest approach to it is *Bowe v. Frink, supra.* But, as already noted, that was an action on *quantum meruit,* and also for conversion based upon the fact that the defendant had converted a sidewalk, which he had refused to pay for, to his own use; his right to remove the walk was neither involved nor decided. Although language is used which tends to support appellees' claim that plaintiff herein had no right to remove the pavement, this language was used by way of argument, and is not binding as a precedent. But two conditions obtain on this right of removal, and the first is that it may be done without detriment to the property or only such detriment as will arise from the laying of a new pavement and gutter. The demurrer admits that the removal may be done without causing serious inconvenience or injury to any of the defendants, so that we need not, on this appeal, do more than accept the admission. Again, it must appear that plaintiffs were not guilty of fraud, and that failure to complete the contract was not due to any willful wrong on their part.

True, it has been found and adjudicated that the plaintiff herein did not comply with the terms of its contract, and that

the work was never accepted and approved by the city, and no assessments have ever been made on account thereof. But the record also shows that on the 1st day of October, 1906, six days after the decision of the original *Wingert* case, plaintiffs served upon the city the following notice:

We, the undersigned, having finished, as we believe, the pavement under our contract with the city of Tipton, Iowa, for the construction of pavement on Fourth street from the east line of Cedar street to the east curb line of East street, on Meridian street from the north line of Fourth street to the south line of Fifth street, in your city aforesaid, do hereby respectfully ask your honorable body to order an assessment and issue certificates in payment for same to us, in city warrants as contract provides; and that same may be expeditiously done, we hereby notify you that we are ready and willing, and do hereby offer, to remedy any defects and reconstruct any portion of said pavement at our own expense, which your honorable body may point out or designate, and to complete all of said work up to the substantial requirement of our said contract. That the matters herein referred to may be speedily accomplished and performed, we request early action hereon, so that we may be advised and act accordingly.

The city did not respond to this notice by pointing out the defects complained of, and in one of the prior cases we held that this was not in time to justify a recovery against the city on the ground of *quantum meruit,* and, in the same case, it was held in effect that plaintiff was estopped from relying upon its offer of performance because of its attitude in former cases. We must, for the purposes of this case, treat the offer as *bona fide,* for the record would so indicate, and, while not sufficient to justify a recovery against the city because of failure to point out defects, it should be considered in this case as bearing upon the equities in plaintiff's favor. There never has been a finding that plaintiffs were lacking in good faith in making the offer to reconstruct, and, whilst they have been defeated in all their attempts to recover from the city, or the property owners, we do not think that the

question of fraud or good faith has ever been adjudicated in such a manner as to defeat the present action to establish title to the materials which went into the improvement and to secure a decree authorizing their removal.

Defendants also rely upon laches and the statute of limitations. As the defendants have not, until recently, been claiming title to the property or disputing plaintiff's right to remove the property, and as it was not finally decided that plaintiff had no remedy against either the city or the property owners until January 13, 1911, we do not think the statute has run against them, or that they have been guilty of such laches as would prevent a recovery. After their first defeat, they offered to reconstruct the improvement, if the city would point out the defects; and, upon failure of the city to do so, they brought suit against the city to recover the contract price; and even before that, although after notice to the city that they would repair and reconstruct, they brought suit against the property owners; both actions on the theory that, as they had offered to do all within their power, they were entitled to some relief. In all these actions they were defeated, and, until thus defeated, they would doubtless have no right to claim the pavement as their own. In any event, they should not, in view of this record, be held guilty of such laches as defeats their action. Whether or not plaintiffs have been acting in good faith and were free from fraud and intentional wrong is a matter which cannot be determined upon this appeal, for the reason that the case was determined upon a demurrer, which admits all facts well pleaded.

7. SAME: limitation of actions: laches.

*Detroit v. Paving Co.*, 36 Mich. 340, relied upon by appellees is not in point, as an examination will show.

Some of the provisions of the contract between plaintiff and the city are relied upon by the respective parties. One of these provisions was as follows:

8. SAME.

(13)  If the contractor shall abandon his work under this contract, or if at any time the engineer shall be of the opinion and shall so certify to the committee that the work or any part thereof is unnecessarily delayed, or that the contractor is willfully violating any of the conditions of the contract, or executing the same in bad faith, then at the option of the committee, the contract may be declared null and void, the security may be forfeited and the materials delivered at and built into the work shall be the property of the city. The committee may then at its option proceed to complete the work, either by days' work or by contract, and any and all damages and increased costs of the work to the city will be deducted from the funds retained by the city, and from any sum realized from the value of the materials reverting to the city, and the city through its committee shall have the right to bring suit against the contractor or any of his sureties for any and all damages and increased costs.

Defendants claim something thereunder in the brief filed for them; but there is no showing that the city ever acted thereunder, or that the property has been forfeited to the municipality as therein provided.

Appellants rely, to some extent, upon these provisions:

(20)  All materials furnished and work done will be inspected by the engineer, and if not in accordance with these specifications and the contract, they will be rejected (and shall be immediately removed), and other work done and materials furnished in accordance therewith. If the contractor refuses to remove the work and materials as above, when ordered, then the engineer shall have the right and authority to stop the contractor and his work at once and to supply men and materials to remove and correct the faulty work and materials at the cost and expense of the contractor; such expense to be deducted from any moneys then due, or to become due, to the contractor from the city. . . . The engineer shall have the right to reject at any time previous to the final settlement with the contractor, any work or materials which may be found to be faulty. Inspectors may be appointed by the committee, whose *duty it shall be to point out to the contractor* any neglect or disregard of these specifications, but the right of final acceptance or condemnation shall not be affected by such inspection. . . . A

.final estimate of all the work done and materials delivered according to the contract and these specifications will be made immediately after the engineer has satisfied himself by tests, examinations or otherwise that the work has been and is finally and fully completed in perfect accordance with the contract and specifications, and the contractor will be paid as hereinafter provided.

These are relied upon as indicative of an intention of the parties that the improvement should not become the property of the city, or of the abutting property owners, until paid for, and that any of it found faulty was, by the express terms of the contract, to be removed by the contractor.

On the record before us, we are satisfied that the trial court correctly sustained the motion to dissolve the temporary writ of injunction, but that it was in error in sustaining the demurrer. The case will be remanded, with directions to overrule the demurrer and reinstate the case.

*Affirmed* in part, and *reversed* in part.

WEAVER, C. J., dissenting.