### WROUGHT-IRON BRIDGE Co. v. TOWN OF UTICA and others.

*(Circuit Court N. D. Illinois.   July 13, 1883.)*

MUNICIPAL CORPORATIONS—OBTAINING PROPERTY WITHOUT AUTHORITY—RESTITUTION OR COMPENSATION.

    The obligation to do justice rests upon all persons, natural and artificial, and if a municipality obtains money or property without authority, the law, independent of any statute, will compel restitution or compensation.

In Equity.

*C. C. & C. L. Bonney,* for complainant.

*Lawrence, Campbell & Lawrence,* for defendants.

BLODGETT, J.   This case is one which it appears to me is to be solved solely upon the undisputed facts, and those facts are substantially these:

The towns of Utica and Deer Park, situate in La Salle county, in this state, adjoin, and the Illinois river forms the boundary line between them; Utica lying on the north and Deer Park on the south side of the river. On the fourteenth of February, 1876, an election was held in the town of Utica, at which a proposition for borrowing money, with which to build a bridge across the Illinois river, was carried by a vote of the legal voters of the town. On the twentieth of May, 1876, a town meeting was held in Deer Park, at which a like proposition was adopted. In pursuance of a notice from the highway commissioners of the town of Utica, a joint meeting of the highway commis-

sioners of the two towns was held in the village of Utica on the eighteenth of March, 1876. This meeting was attended by all the highway commissioners of Utica and one of the commissioners of Deer Park, making four members of the joint body, and having been advised by lawyers in good standing in the profession that in such joint meetings a majority of the entire body was legally competent to transact business, they proceeded to pass a resolution to build a bridge across the Illinois river, at or near the point where the road running south from the village of Utica crosses said river, the cost of which should not exceed $35,000, and to advertise for sealed proposals for the construction of such bridge, and also appointed a committee to obtain plans and specifications for the masonry of such bridge. On the twenty-second of March a further joint meeting was held, which was attended only by the three commissioners of Utica and one from Deer Park, at which the committee appointed by the meeting of the 18th, reported the plans and specifications for the masonry, which report was accepted and the committee discharged, and the form of an advertisement for proposals for the work was adopted and the same ordered published in certain newspapers. On the third day of April, 1876, a joint meeting of the board of highway commissioners of the two towns was held for the purpose of receiving and opening the bids, or proposals, for the building of the contemplated bridge. This meeting was attended by all the highway commissioners of both towns. The bids were opened, and, by unanimous consent of all the commissioners, further business was suspended and the proposals taken under advisement. On the twenty-fifth of May, 1876, a further joint meeting was held, which was attended only by the three highway commissioners of Utica and one from Deer Park, at which meeting a contract for the substructure of the bridge was awarded to Messrs. Fife & Hetherington, for which a written agreement was duly made and executed, signed by the three commissioners of Utica and one commissioner from Deer Park, and the contract for the iron superstructure was awarded to the complainant in this case, and what purported to be a written agreement between complainant of the first part, and the commissioners of highways of the town of Deer Park of the second part, was executed and delivered, bearing date on the twenty-fifth day of May, 1876. This agreement seems to have been duly executed by complainant, through its proper officers, but was only signed by the three highway commissioners of the town of Utica and one highway commissioner of the town of Deer Park. Another of the highway commissioners of Deer Park signed the contract at or about the time the bridge was completed, giving as a reason for not signing at the time the other commissioners signed, that he chose to wait, before signing, until the time for contesting the election by which the vote in his town to borrow money to build the bridge had passed. By the contracts with Fife & Hetherington, the substructure—that is, the abutments and piers of masonry on which the iron bridge was to rest—was to be completed on or before the fifteenth of August, 1876, and they were to be paid 85 per cent. of their contract price as the work progressed, and the remaining 15 per cent. on the completion of their work. The contract with complainants provided for the completion of the iron superstructure of the bridge by the fifteenth of October, 1876, and the complainant was to be paid the sum of $17,400 for said superstructure. A contract was also made between complainant and the highway commissioners of Utica, contemporaneously with the bridge contract, by which it was agreed in substance that Utica should only be liable to complainant for one-half the cost of the superstructure, until Utica should have collected the other one-half from Deer Park, and in case Deer Park failed or refused to pay its one-half of the cost of the bridge, the highway commissioners of Utica would bring suit against Deer Park to recover the money due from Deer Park for the construction of the bridge. On the first of June, 1876, and before complainant had done any work on the bridge, a notice was served by the supervisor of Deer Park on the highway commis-

sioners of Utica, Fife & Hetherington, and the complainant, to the effect that the authorities of Deer Park—that is, the supervisor, clerk, and commissioners of highways—had decided, under legal advice, that the town of Deer Park had no authority, under said vote, to issue its bonds for the purpose of building said bridge, and that the commissioners of highways of the town could not lawfully enter into a contract for the building of such bridge, and that no liability of the town on such contract would be recognized, and they were also forbidden the use of the highways of Deer Park for the purpose of constructing such bridge. The bridge was completed according to contract by complainant, about the twenty-third day of December, 1876, there having been some delay in the work on the substructure which delayed complainant in the completion of the superstructure, and on the day last mentioned a joint meeting of all the highway commissioners of the two towns was held, at which the bridge was accepted and an agreement in writing made between the highway commissioners of the two towns for the maintenance of the bridge in good order, at the equal cost of the two towns. The town of Utica issued its bonds to the amount of $19,000, the proceeds of which were applied to the payment of Fife & Hetherington on their contract, as the money became due; and the town of Utica also paid to complainant $2,609.45, to apply on complainant's contract for the superstructure; that is, when the materials for the superstructure arrived at Utica, the freight on the same, amounting to $2,609.45, was paid by that town and charged or debited to the complainant. At the September meeting, 1877, of the board of supervisors of La Salle county, the sum of $7,000 was appropriated to aid Utica and Deer Park in the construction of this bridge, and as it then appeared that Utica had paid all that had been paid towards the work, it was ordered that $3,500 of said appropriation be paid to Utica, and the same was so paid, and at the March meeting of said board, 1882, the balance of said appropriation was ordered paid to the town of Utica. After the completion of the bridge, the town of Deer Park refusing to make any payment whatever to complainant, and the town of Utica refusing to make any further payment than the $2,609.45 paid for freight on materials, complainant brought an action of *assumpsit* against the two towns in the circuit court of La Salle county, which resulted in a judgment by default against Utica and against Deer Park, on trial of the issues by the court. Damages were assessed against each town separately at $10,096.82, and one-half the costs. From this judgment an appeal was taken by the town of Deer Park to the appellate court of the second district of this state, where the judgment was reversed, (3 Bradw. 572,) the appellate court holding, in substance, that there was no legal liability on the part of either town to pay complainant for this bridge; the conclusion being briefly that there was no such joint action by the board of highway commissioners of the two towns as made the contract with complainant binding on either town. Thereupon, said cause having been remanded to the circuit court, was again tried and the issues found for the defendants and judgment given against complainant, which judgment was afterward affirmed by said appellate court, and on appeal to the supreme court of this state the last judgment of said circuit and appellate courts was affirmed. 101 Ill. 518. Complainant now brings this bill, upon the ground that, in making the contract for the construction of said bridge, complainant acted under a mistake as to matters of law and fact; and, inasmuch as complainant has no remedy at law, prays that it be allowed by the decree and judgment of this court to take down and remove said bridge.

There can be no doubt, from the testimony in the case, that complainant built this bridge in good faith, in the expectation that it would be paid for by one or both of these towns. At the time the

contract for the construction of the bridge was made with complainant both these towns had, by a vote of their electors, authorized by the laws of the state, (Rev. St. *c.* 121, § 111,) decided to borrow money with which to build the bridge.   From the nature of the work, the substructure was first to be built, and, as a matter of course, it was the first work to be paid for.   There seems to have been no opposing party in the town of Utica in regard to the policy of the enterprise, and as this money became due to the contractors for the piers and abutments, it was paid to them by the commissioners of highways of Utica, so that by the time complainant's contract was completed Utica had exhausted its funds in the payment for the substructure, and complainant was left to look to Deer Park for payment for the iron superstructure, although by the contract with complainant the town of Utica had agreed to pay one-half the cost of the superstructure.

I do not care to spend time upon a metaphysical discussion of the question whether complanant acted under a mistake of fact or a mistake of law in making this contract, or in the building of this bridge in pursuance of the contract.   It is not a supposable case that complainant would have built the bridge if it had not expected to be paid for it.   The action of the authorities of both towns, up to the time the formal contract was made, justified such expectation, and while the complainant may have been wrongly advised in the matter as to how many members of the board of highway commissioners constituted a quorum in a joint meeting of those boards, there can be no doubt that the complainant would not have built the bridge but for the expectation that the bridge would be paid for, which expectation was, as it seems to me, fully justified by the fact that both towns had voted to raise the money for the purpose.   To have assumed that the towns were legally bound by the contract of less than a majority of the highway commissioners of both towns, acting in joint session, may have been a mistake of law; to have assumed that they would honestly carry out the expressed will of the voters, and borrow the money and pay for the bridge, without captious objection, was an assumption of fact, and the mistake in acting upon this assumption was clearly a mistake of fact.   When the bridge was completed, the highway commissioners of both towns met, had the bridge examined by their engineer, and he reported that plaintiff had in all respects complied with its contract; and if the plaintiff had not been acting, as a matter of fact, under the belief that the bridge would be paid for under the contract, which this joint meeting of highway commissioners had been so careful to ascertain had been fully performed by the plaintiff, it may be assumed, from all knowledge of human actions, that the plaintiff would never have given to these two towns the possession of the bridge.   It was no part of the business of this plaintiff to build bridges gratuitously for the people of these towns, or any other community.   The plaintiff was and is a business

corporation, taking contracts like this with the expectation that it is to be paid for the labor and material it expends in constructing works like this.

This case seems to me in all essential principles analogous to the case of *Chapman* v. *County Com'rs*, decided by the supreme court of the United States during its last term. 15 Chi. Leg. News, 193; [S. C. 2 Sup. Ct. Rep. 62.] In that case, the county of Douglas, in the state of Nebraska, had bought a farm to be used for the support thereon of the county poor, and a deed conveying the farm to the county had been executed and delivered. One thousand dollars of the purchase money was paid, and the county gave its obligations, secured by a mortgage on the farm, to secure the balance of the purchase money, and the county took possession and made the improvements. When these obligations given for the purchase money became due, payment was refused by the county on the ground that the notes and mortgage given to secure the same were void for want of power to make them. The seller filed a bill to obtain restitution of his property. In the opinion the court say, by Mr. Justice MATTHEWS:

"The contract for the sale itself had been executed on the part of the vendor by the delivery of the deed, and his title to it had consequently passed to the county. As the agreement between the parties had failed by reason of the legal disability of the county to perform its part according to its condition, the right of the vendor to rescind the contract and to restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary may be shown. As was said by the court in *Marsh* v. *Fulton Co.* 10 Wall. 676-684, and repeated in *Louisiana* v. *Wood*, 102 U. S. 294-299, the obligation to do justice rests upon all persons, natural and artificial, and if the county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. * * *"

The learned judge, after an examination of the authorities, finds that there is no valid reason why restitution should not be made, and concludes by saying:

"The conveyance to the county passed the legal title, but upon a condition in the contract which it was impossible, in law, for the county to perform. There resulted, therefore, to the grantor the right to rescind the agreement upon which the deed was made, and thus convert the county into a trustee, by construction of law, of the title for his benefit. There is nothing, therefore, to prevent the relief prayed for being granted, if it can be done without injustice to the defendant. On this point, it is said, it would be inequitable to decree a rescission of the contract and restoration of possession of the property, because the parties cannot be placed *in statu quo*. * * * If the relief asked was an unconditional reconveyance of the title and surrender of possession, this would undoubtedly be true; but such is not the case. Any such injurious and inequitable results as are deprecated may easily be averted by the simple payment of the amount due on account of the purchase money."

Tested by this reasoning of the supreme court, it seems to me plaintiff's right to the relief asked in this case is clear and undeniable. The delivery of this bridge to the towns of Utica and Deer Park passed to them the apparent legal title, but they have never be-

come the equitable owners. The bridge has not been paid for, and they have, therefore, no equitable right to keep it without paying for it.

As to the objections interposed by the respective defendants to the relief asked by plaintiff, it is only necessary to say: The town of Utica insists that it has expended a large sum of money in paying for the piers and abutments on which this bridge rests; has paid also over $2,500 to plaintiff to apply on the superstructure,—all which will be lost if plaintiff is allowed to remove the iron superstructure; that the town of Utica has actually, in good faith, expended more than its proportion of the cost of the construction of the bridge as a whole. The reply to this is that this defendant agreed to pay plaintiff one-half the cost of the iron superstructure, and has repudiated its contract in that regard, and that this plaintiff should not be made a loser by reason of the default of Deer Park to keep faith with Utica and pay its half of the cost of the bridge. While it was agreed that Utica should only pay for half the cost of the superstructure, it was also agreed that it should collect the other half from Deer Park and pay it to complainant, and this it has neglected to do.

In behalf of Deer Park, it is urged that the plaintiff placed the bridge there voluntarily, and in face of the notice from the officers of the town that the town would not pay for it; that the bridge is built upon a public highway of the town; and that the situation of the bridge is analogous to that of a house knowingly built by one man upon the land of another. To which it may be answered that the plaintiff had as good right to act on the faith that the town would pay for the bridge, because the people had voted to do so, as it had to act upon the notice of the officers of the town that it would not pay for it. There was no attempt on the part of the town to prevent the construction of the bridge, but its proper officers were prompt to accept the bridge, and the people of the town to use it as soon as it was finished, according to the contract; and, if this town has so far used this bridge without intending to pay for it, it cannot complain if the court allows the plaintiff to take it away.

The defense on the part of the county of La Salle is that it has contributed $7,000 towards paying for the bridge, of which it will be deprived if the bridge is removed. This argument would have some force if the county had paid the money to the plaintiff; but the payment of that sum to the town of Utica, which has been applied by that town in the reduction of its own contribution to the bridge, cannot, it seems to me, in any way affect the rights of this plaintiff. If the county authorities saw fit improvidently to appropriate this $7,000 where it would not be applied towards paying for the construction of the bridge, it is the misfortune of the county, and not the fault of the plaintiff.

Utica has paid $2,609.45 to apply on plaintiff's compensation for

the bridge, but this is so small a proportion of the entire cost of the bridge that it ought not to affect plaintiff's right to the relief prayed for, inasmuch as the court can adjust the equities of the parties in that regard.

There will, therefore, be a decree entered that, unless the defendants, the towns of Utica and Deer Park, within 90 days from this date, pay to the plaintiff the amount due upon the contract for the construction of this bridge, deducting the $2,609.45 which has been paid, together with interest upon the balance unpaid at the rate of 6 per cent. from the time of the completion of the bridge, the plaintiff will be allowed to take down the bridge and remove it, under the direction of a proper officer of this court; but that, if the defendants, or some of them, shall not elect to make this payment and thereby save the bridge, plaintiff will be allowed to take down and remove the iron superstructure of the bridge; but before plaintiff so removes the bridge, it will be required to repay the town of Utica the sum of $2,609.45 so paid to plaintiff by said town on account of the bridge.