### LEE v. BOARD OF COM'RS OF MONROE COUNTY.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

#### No. 1,025.

COUNTIES—PURCHASE OF BRIDGES—UNAUTHORIZED ACT—FAILURE TO PAY—RIGHT TO REMOVE.

Where the commissioners of a county, representing that they had complied with the law, and had the right so to do, purchased bridges, and issued orders for the payment, and thereafter the payment of such orders was enjoined because the law had not been complied with, the holder of such orders may maintain an action for leave to remove such bridges unless the county pays therefor.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

The appellant filed his bill in the court below alleging that the defendant (appellee), under the laws of the state of Ohio, is a corporation capable of being sued, and is required to construct and keep in repair all necessary bridges within Monroe county, Ohio; that the Canton Bridge Company and defendant entered into four contracts in writing, by which said bridge company agreed to furnish all the material, except lumber, and construct and complete ready for travel, the superstructure for three iron bridges and the superstructure and substructure for one iron bridge over certain streams in said county, which structures were constructed according to the terms of said written contracts, and were delivered to the defendant and accepted. It is alleged that the Canton Bridge Company was informed and led to believe by the defendant that all of the provisions of law had been complied with in regard to the letting of said contracts; that upon the completion and acceptance of the bridges the board of commissioners paid the Canton Bridge Company on account thereof the sum of $1,240, and, to evidence the balance due, executed and delivered to the Canton Bridge Company five orders, as by law provided, which were presented to the auditor of the county, who executed and delivered to the company five warrants on the county treasurer, directing him to pay to the order of said company the amount thereof out of the bridge funds, which warrants were presented to the treasurer, who indorsed on them, "Not paid for want of funds," together with the date of such presentation; that these warrants were, for a full and valuable consideration, sold and transferred by the Canton Bridge Company to the People's Bank of Canton, and by it sold to the complainant for a valuable consideration, without any knowledge on his part of any infirmity in them, and that he is now the owner of them; that after the sale of said warrants to the complainant certain taxpayers of the county of Monroe commenced in the court of common pleas an action

against the auditor, alleging that all of the contracts with the Canton Bridge Company and the warrants issued in pursuance thereof were illegal and void, because of the failure of the board of county auditors to comply with the provisions of law relative to the purchase and erection of bridges, and on final hearing an injunction restraining the county treasurer from paying said warrants, or any of them, was granted; that after the commencement of the proceedings for injunction, the complainant learned for the first time that the board of commissioners, in attempting to purchase the bridges, had neglected to comply with certain statutory provisions governing and controlling their action in letting contracts, and by reason thereof said contracts and warrants were void: and thereupon the complainant submitted to the defendant a proposition that he would surrender said warrants for cancellation, repay the money it had paid on the contracts with interest from date of payment, first deducting therefrom an amount that should be reasonable for the use of the bridges from the time they were accepted; and in consideration of so doing the defendant should permit the complainant to remove said bridges at his own expense,—all of which the defendant refused to do. It is alleged that the bridge company made a mistake in acting upon the representations of the defendant that it had complied with the provisions of law regarding the letting of contracts for the erection of bridges; and also made a mistake in believing that the contracts were binding on the defendant, and in believing that the acceptance of the bridges by it amounted to a purchase and ratification of the contracts, and bound the county of Monroe to make payment therefor; and it is alleged that keeping and appropriating said bridges to the public use while the county refuses to make any payment for them is a fraud upon the complainant. The complainant asks that on payment of the amount which has been received by the Canton Bridge Company he be adjudged entitled to take down and remove the bridges, and that an account be taken concerning their use by the county of Monroe during the time it has used them, or, if the defendant elects to keep the bridges, it may do so upon condition of paying for them. To this bill of complaint the defendant interposed a general demurrer, which was sustained by the court below, and the complainant appeals.

H. B. Webber, for appellant.

Spriggs & Ketterer, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The provisions of the statutes of the state of Ohio relating to the purchase and erection of bridges were not complied with by the county commissioners before entering into the contracts with the Canton Bridge Company, and it is conceded by both parties to this suit that they were invalid, and no recovery could be had upon them, nor upon the warrants given in payment, for any part of the purchase price of the bridges. These statutes authorizing the purchase and erection of bridges by county commissioners have been before the supreme court of Ohio, which has held that a contract made for the purchase and erection of a bridge in disregard of the statutes on that subject is void, and no recovery can be had against the county on the contract, or for the value of such bridge; that the commissioners, having no power to bind the county except as provided by the statutes, could not, by accepting and retaining a bridge under a void contract, bind the county to pay what it is reasonably worth; and that, when both parties have acted in disregard of the statutes, the court will leave them where they have placed themselves, and refuse to aid either. Bridge

Co. v. Campbell, 60 Ohio St. 406, 54 N. E. 372. The appellee contends that the supreme court of Ohio in that case has announced as the public policy of the state that no court of law or equity will grant relief to parties who have entered into a contract in disregard of its statutes, and quotes the language of Judge Burket, saying:

"Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes, and decided cases, is that, to bind the state, a county, or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves. If the contract is executory, no action can be maintained to enforce it, and, if executed on one side, no recovery can be had against the party on the other side. * * * It is necessary to so construe the statutes in order to prevent the evils which induced the enactment of them. If such statutes could be evaded, there would always be found some public servants who would be ready and willing to join in transactions detrimental to the public, but favorable to themselves or some favored friend; and, if public officers should be ever so honest, some persistent agent or salesman would impose upon them, and obtain more out of the public treasury than is justly due. When the provisions of the statute are followed, and all is done openly and publicly, the public interests are best conserved; and even then there is often complaint to the effect that some one has been favored."

If this language is susceptible of the construction claimed for it by the appellee, it could have no binding force in a federal court sitting in equity. Bucher v. Railroad Co., 125 U. S. 555, 582, 8 Sup. Ct. 974, 31 L. Ed. 795. But it has no application to the suit at bar. There is no attempt in this case to enforce these contracts, directly or indirectly, or to collect the value of the bridges under an implied promise to pay for them. The supreme court of Ohio has not declared it to be the public policy of the state to allow its municipal officers to induce people to part with their property, and then set up its want of power to pay for it, and thus appropriate it, because it has been able to deceive the persons who furnished it, relying on the ability of the municipality to bind itself. It has announced that contracts made by a municipality in disregard of the statutes of the state are absolutely void, and will not lay the foundation for a recovery of any part of the price stipulated for in the contract; and that a municipality cannot bind itself to pay what property is reasonably worth when it is furnished, in disregard of the statutes. But while the law affords no remedy, equity, although it will not enforce the contract or create a contract between the parties on account of the acceptance and retention of the property, when the property is in existence, and in the hands of the defendant, will not allow it to retain that to which it has no title whatever, and prevent the owner from reclaiming it. The case presented by the bill shows no moral turpitude in the transaction, and, although the bridge company should have ascertained whether each step provided by the statutes had been properly taken, the law placed upon the defendant the duty of taking those steps. It was necessary for it to comply with every provision of the statutes in that behalf before entering into these contracts, and it represented to the bridge company that it had so complied, and thus misled the bridge company into entering into the agree-

ment, the carrying out of which placed these bridges in the hands of the defendant. The complainant has no remedy at law, and to deny him equitable relief would be to enforce the contract on the part of the bridge company, and to allow the defendant to repudiate its part of the same contract, and thereby appropriate, without compensation, property to which it had no legal or equitable right. It was said by the federal supreme court in the case of Marsh v. Fulton Co., 10 Wall. 676, 684, 19 L. Ed. 1040, 1043:

"The obligation to do justice rests upon all persons, natural or artificial; and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

If there was any fraudulent purpose of the bridge company, or connivance on its part at the action of the defendant in disregarding the provisions of the statutes, so that the purpose for which those provisions were enacted should be thwarted, then neither the bridge company nor this complainant could come into a court of equity and ask any relief, as they could not come into court with clean hands; and the relief would be denied for that reason, and not on the doctrine of the public policy of the state. There is no public policy recognized by the courts which allows any person, natural or artificial, to take the property of another, and appropriate it to its own use, and deny to the person who is innocent of fraud the right to reclaim it. As there was no contract binding on either party in this case, and there was no fraud on the part of the bridge company or this complainant, and the property is in existence and in the hands of the defendant, it seems clear that the relief asked for should be granted. The case seems to come entirely within the principles laid down by the supreme court in the case of Chapman v. Douglas Co., 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378. See, also, Wrought-Iron Bridge Co. v. Town of Utica (C. C.) 17 Fed. 316.

The decree sustaining the demurrer should be reversed, and the demurrer overruled, with leave to defendant to answer.