31 P.(2d) 993

SHAW, Commissioner of Banking of Texas, et al. v. BOARD OF EDUCATION OF VILLAGE (TOWN) OF HOBBS, N. M., et al.

No. 3955.

Supreme Court of New Mexico.

April 16, 1934.

Hervey, Dow, Hill & Hinkle and Brice & Sanchez, all of Roswell, W. B. Robinson, of Carlsbad, and Robert C. Dow, of Lovington, for plaintiffs in error.

John R. Brand, of Hobbs, Tom W. Neal, of Lovington, George T. Harris, of Hobbs, and J. W. Chapman, of Santa Fé, for defendants in error.

SADLER, Justice.

James H. Shaw, as commissioner of banking of the state of Texas, and others, as plaintiffs, instituted suit in the district court of Lea county against the boards of education of the town of Hobbs and the village of New Hobbs, N. M. A statement of the facts out of which the suit originates is necessary.

On July 3, 1930, municipal school district No. 16 of Hobbs, N. M., acting through its board of education and with the consent of the educational budget auditor of New Mexico, authorized the issuance and executed certificates of indebtedness aggregating the sum of $250,000 in denominations of $1,000 and $5,000, numbered consecutively 1 to 82, inclusive. The certificates were purportedly issued in anticipation of a tax levy pursuant to the provisions of 1929 Comp., § 120—810, of the New Mexico Statutes Annotated, for the purpose of raising funds with which to construct and equip two school buildings.

Subsequent to the execution of these certificates, the municipal school district of New Hobbs was created and incorporated from a part of old school district No. 16 of Hobbs. The issue of certificates was apportioned between the two districts, the newly created district taking certificates having a face value of $75,000, the balance remaining to the old district.

Certificates of the face value of approximately $200,000 of the total authorized issue were negotiated. As a result two school buildings were constructed and equipped. These buildings of the respective districts were erected upon real estate owned by such districts before the certificates were issued.

At the time said certificates were authorized and issued no levy had been previously made

for the construction of any school buildings, nor had any contracts been entered into for such construction.

The budget as approved and certified by state tax commission for school district No. 16 for the year 1930 authorized the raising of the sum of $24,126.00 for direct charges and a levy of 5 mills to meet the same. This levy presumably was made at the regular October, 1930, session of the board of county commissioners of Lea county. The highest estimated sum anticipated from this levy was $25,395. Only $20,991.98 had been collected under the levy to the time of trial, from which certificates 1 to 7, both inclusive, aggregating $19,000 had been paid in redemption of certificates issued for equipment, leaving a balance of $1,991.98 in the hands of the treasurer of Lea county at the time of trial.

It appears that relatively only a small amount of money reached the hands of the county treasurer from the sale of these certificates. Whether this circumstance reflects a misappropriation of proceeds of direct sales or the exchange at a large discount of certificates for construction costs in lieu of a direct sale thereof, the trial court did not say, and the record fails to satisfy. But the existence of one or the other of these alternatives forms the basis of the trial court's expressed view that a fraud had been perpetrated on the district, as will be pointed out.

The plaintiffs in their complaint proceed upon two theories. The primary theory advanced in their first cause of action presupposes the validity of the certificates and seeks recovery thereon. It calls upon the county treasurer for an accounting of the proceeds derived from the collection of taxes in anticipation of which the certificates were issued, and asks that other defendants holding certificates be required to disclose the number and amount held by each, the payments received thereon, if any, and that they be declared trustees of any amounts received for the benefit of other certificate holders establishing their right to participate in funds arising from the levy. An injunction also was sought against the county treasurer to restrain him pendente lite from making further payments on the certificates.

The next cause of action advances a secondary or alternative theory of recovery. It presupposes the invalidity of the certificates and alleges that the certificates held by plaintiffs and some, if not most, of them held by defendants, actually went into the construction and equipment of the buildings possessed by the two school districts. It alleges that all bona fide holders of certificates, whose proceeds were used in the construction of said buildings, are the equitable owners thereof, and asks that the properties be decreed to a trustee in trust for the use and benefit of the plaintiffs and all other bona fide holders who might prove within a reasonable time their interests therein; that said trustee be authorized to sell the properties and apply the proceeds arising therefrom pro rata to the payment of the interests of the respective claimants who should establish their right to participate in the fund arising from such sale.

The two boards of education met the issues tendered by asserting the certificates to be

wholly void because issued in contravention of N. M. Const., art. 9, § 11, in two respects: (1) That the question of borrowing money to construct the school buildings had not been submitted to the qualified electors of the district and approved by a majority voting thereon; and (2) that the purported debt created by these certificates exceeded 6 per cent. of the assessed valuation of taxable property within said school district, as shown by the last preceding general assessment. They also pleaded the invalidity of the certificates as violative of 1929 Comp., § 33—4241, N. M. Stats. Ann., commonly known as the "Bateman Act."

Upon the issues as finally made up, most of the defendants, being certificate holders, by answer and cross-complaints placed themselves in substantial alignment with the original plaintiffs. Two taxpayers permitted to intervene in the cause, by their pleading, made alignment with the defendant school districts in respect of the claimed grounds of invalidity attaching to the certificates. Another defendant, New Mexico School Supply Company, which already had secured payment for certificates of the face value of $16,000, received in exchange for school equipment, by motion made during the progress of the trial, asserted the invalidity of the indebtedness evidenced by said certificates to the extent of any excess above delinquent tax collections applicable thereto after close of the fiscal year of 1930–31. The basis of its claim was the asserted application of the Bateman Act to the transaction.

The trial court when the evidence was in rendered its decree resolving the issues in favor of the defendant school districts, adjudging the certificates wholly void, and denying to plaintiffs any relief whatsoever. From the decree so rendered the matter comes before us for review upon writ of error. The plaintiffs in error here are the original plaintiffs below and such defendants as there made common cause with them. The same situation exists as to the defendants in error. Hence, it will be convenient to designate the parties in this court as plaintiffs and defendants.

The findings and conclusions of the trial court establishing the invalidity of said certificates were in large measure proposed by the plaintiffs themselves. Among other things it was found that the certificates were all issued on July 3, 1930, pursuant to 1929 Comp., § 120—810; that the tax levy in anticipation of which the certificates were issued actually had not been made by the board of county commissioners of Lea county at the time of their issuance; and that when issued there existed no contract for the construction or repair of any school buildings.

The trial court also found that the total value of the buildings sought to be reclaimed was not less than $45,000 nor more than $65,000, and that they were annexed to the real estate and could not be removed. It further found that the school buildings were erected and equipped from the proceeds of said certificates.

Upon conclusions of law proposed by the plaintiffs the court held:

"(a) That the issuance of said certificates of indebtedness was an attempt to borrow

money for the purpose of erecting and furnishing permanent school buildings without submitting the proposition to create the debt to the qualified electors of the school district, and therefore contrary to the provisions of Section 11, Article 9 of the state Constitution.

"(b) That the issuance of said certificates was an attempt to create the indebtedness in an amount exceeding 6% of the assessed valuation of the taxable property within said school districts as shown by the preceding general assessments and therefore in violation of Section 11, Article 9 of the Constitution of New Mexico.

"(c) That at the time of the execution of said certificates of indebtedness no contract or contracts for the construction or repair of school buildings in either of said school districts had been made by the Boards of Education thereof, as provided by Section 810 of Chapter 120 of the New Mexico Statutes Annotated, compilation of 1929.

"(d) That at the time of the execution of said certificates of indebtedness no tax levy had actually been issued for the construction or repair of school buildings in either the municipal school district of Hobbs or New Hobbs, as provided by Section 810, of Chapter 120 of the New Mexico Statutes Annotated, compilation of 1929.

"(e) That Section 810 of Chapter 120 of the New Mexico Statutes Annotated, 1929 Compilation is an attempt to permit school districts to borrow money for the purpose of erecting and furnishing school buildings without submitting the proposition to create the debt to the qualified electors of the district, and is not authorized under the provisions of Section 11 of Article 9 of the Constitution of the state and is therefore unconstitutional and void."

These conclusions of law proposed by the plaintiffs themselves were unexcepted to by any party to the cause. Hence, the pronouncements made must be taken as establishing the invalidity of said certificates as the law for this case.

In denying the plaintiffs the relief sought in their second cause of action, namely, to reclaim the buildings, the trial court stated:

"I cannot escape the conclusion that gross fraud was perpetrated upon the district. Only a small amount of money was paid into the county treasury on the proceeds of these certificates. The school district must have turned these certificates over to the contractors, materialmen, and people who furnished the school supplies. The largest amount contended for as a value of the property received is between fifty and sixty thousand dollars, and the intervenor thought that was excessive. They must have given these people about four to one for the certificates, or someone connected with the administration of these funds embezzled them. I think it furnished a good example of the wisdom of our constitutional and legislative limitations. To validate this issue and allow a lien and give the property to the lienholders and the certificate-holders would be saying: You may go in and issue these certificates in violation of law at any time and if they are no'

questioned, collect the full amount. If the certificates are questioned, then you can go into court and recover the property.

"The land upon which these buildings were situated was donated to the school board at Hobbs by some public spirited citizen for school purposes, and buildings have been placed thereon. In my judgment, it would be contrary to the public policy of this state, expressed in the constitutional limitations and legislative enactments, to turn these buildings over to these certificate holders."

The pertinent provisions of 1929 Comp., § 120—810, under the purported authority of which the certificates in question were issued, are as follows: "When tax levies for the construction of, and repair to, school buildings have previously been made, county and municipal boards of education may borrow on certificates of indebtedness for the purpose of meeting immediate payments on contracts for such repairs and improvements. Such certificates of indebtedness shall be issued on the faith and credit and on behalf of the district for which such money is borrowed, and may bear interest at rate not in excess of eight per centum per annum. The moneys thereafter first collected on such levies shall be paid in satisfaction of such certificates of indebtedness."

The plaintiffs upon writ of error seek only to recover the buildings resulting, as the trial court found, from the issuance of the certificates in question. They bottom their right of recovery upon the principle announced by way of repetition in Chapman v. Board of County Commissioners of Douglas County,

107 U. S. 348, 2 S. Ct. 62, 68, 27 L. Ed. 378, as follows: "As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in Marsh v. Fulton County, 10 Wall. (77 U. S.) 676, 684 (19 L. Ed. 1040, 1042), and repeated in Louisiana v. Wood, 102 U. S. 294, 299 (26 L. Ed. 153, 155), 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' "

While the authorities sustaining this principle are not so numerous as the field for its assertion might suggest, nevertheless, it seems well established that a municipality cannot acquire property under an invalid contract, and, by virtue of such invalidity alone, avoid paying either the contract price or the reasonable value of the property, at the same time retaining the property. See, in addition to the cases cited, supra, Wrought-Iron Bridge Co. v. Town of Utica (C. C.) 17 F. 316; Lee v. Board of Commissioners of Monroe County (C. C. A.) 114 F. 744, 747; Harrison County Court v. Smith's Administrator, 15 B. Mon. (Ky.) 155; Board of Trustees of Fordsville v. Postel, 121 Ky. 67, 88 S. W. 1065, 123 Am. St. Rep. 184; City of Bardwell v. Southern Engine & Boiler Works, 130 Ky. 222, 113 S. W. 97, 20 L. R. A. (N. S.) 110 and case note; General Electric Co. v. Town of

Ft. Deposit, 174 Ala. 179, 56 So. 802, 804; Municipal Security Co. v. Baker County, 39 Or. 396, 65 P. 369; Edwards v. School District No. 222, 117 Okl. 269, 235 P. 611, 246 P. 444; Snouffer v. City of Tipton, 161 Iowa, 223, 142 N. W. 97, L. R. A. 1915B, 173, and case note; City of Ft. Worth v. Reynolds (Tex. Civ. App.) 190 S. W. 501, 504; Moe v. Millard County School Dist., 54 Utah, 144, 179 P. 980.

The rule is one of simple justice. As said by the Texas Court of Civil Appeals in City of Ft. Worth v. Reynolds, supra: "The obligation to be just and to do right rests upon all persons, natural or artificial, and hence there is a well-recognized line of authorities, which we approve, holding that in cases where property, real or personal, has been acquired by means of a contract forbidden by some constitutional or legislative enactment, or otherwise unauthorized, the vendor, while he will be denied an enforcement of the illegal contract, may recover the specific property in all cases where it can be clearly identified, by a return of all, if anything, that he may have received by virtue of the contract of sale."

Conceding the existence as well as the justice of the rule, the defendants argue it is without application (a) where the contract is contrary to a fixed public policy, (b) where fraud or moral turpitude is involved, and (c) where the contract is illegal, as distinguished from invalid, or originates in a transaction constituting a punishable offense. They attempt to show that in all three respects the transaction out of which these certificates arose denies application of the rule invoked.

There is some basis for the claim that the rule is not absolute. In the case note to be found in L. R. A. 1915B, 173, the author states: "It is pointed out in a note on this subject in 20 L. R. A. (N. S.) 110, to which this note is supplemental, that a municipality cannot acquire property under an invalid contract, and, on this ground, evade payment either of the contract price or the reasonable value of the property, and also retain the property; at least, where the contract is not wholly beyond the power of the corporation to make, or violative of public policy. If the contract is invalid merely because not entered into in accordance with statutory requirements, and the seller has acted in good faith in the matter, he will be allowed to recover the property. Whether he is entitled to recover the property when the contract is entirely beyond the power of the corporation to make, or is violative of public policy, is not entirely clear from the cases. No reason is perceived for making any distinction between a contract invalid merely because of some irregularity, and a contract void because beyond the power of the corporation to make, unless the subject-matter of the contract has been so appropriated that it could not be removed without causing injury to other property of the corporation. In such case the right to remove the property might be denied, but when the contract was irregular merely, compensation would be given."

The Supreme Court of the United States in Chapman v. Board of County Commissioners of Douglas County, supra, lends support to defendants' reliance upon it as recognizing exceptions. Mr. Justice Matthews, writ-

ing for the court, said: "The illegality in the contract related, not to its substance, but only to a specific mode of performance, and does not bring it within that class mentioned by Mr. Justice Bradley in Thomas v. Richmond, 12 Wall. (79 U. S.) 349, 356 (20 L. Ed. 453–457). The purchase itself, as we have seen, was expressly authorized. The agreement for definite times of payment and for security alone was not authorized. It was not illegal in the sense of being prohibited as an offense; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty. It thus falls within the rule, as stated by Mr. Pollock, in his Principles of Contract, 264: 'When no penalty is imposed, and the intention of the legislature appears to be simply that the agreement is not to be enforced, then neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose.' Johnson v. Meeker, 1 Wis. 436."

Nevertheless, the United States Circuit Court of Appeals, in Lee v. Board of Commissioners of Monroe County, supra, touching the question of the transaction running counter to public policy, although admitting the presence of fraud would be fatal, said: "There is no public policy recognized by the courts which allows any person, natural or artificial, to take the property of another, and appropriate it to its own use, and deny to the person who is innocent of fraud the right to reclaim it."

The Supreme Court of Alabama in General Electric Co. v. Town of Ft. Deposit, supra, although granting relief appropriate to the rule, contains a good statement of the exceptions to its application. It said:

"However, these general pronouncements of primary justice cannot be availed of or given effect in all cases of void contracts with municipalities. Where the acts or dealings upon which the contracts are based are 'prohibited by their charters, or some other law bearing upon them, or are malum in se, or violative of public policy,' where the plaintiff, in order to recover, 'must trace his right' through a violation by him of positive law, the courts will not lend their aid to reimburse the loss, nor to restore the property delivered under such contracts. * * * At least one means for and source of the establishment and ascertainment of public policy is statute law. People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736; U. S. v. Trans-Mo. Ass'n, 58 F. 58, 7 C. C. A. 15, 24 L. R. A. 73; Vidal v. Girard's Ex'rs, 2 How. (43 U. S.) 127, 197, 11 L. Ed. 205; Tarbell v. Rutland R. R. Co., 73 Vt. 347, 51 A. 6, 56 L. R. A. 656, 87 Am. St. Rep. 734, note on page 737. 'The law which prohibits the end will not lend its aid in promoting the means designed to carry it into effect; * * * that it will not promote in one form that which it declares wrong in another.' Tarbell v. Railroad Co., supra, quoting Shaw, C. J., in White v. Buss, 3 Cush. (Mass.) 448.

"A distinction is taken between void contracts and illegal contracts. City of Los

Angeles v. City Bank, 100 Cal. 18, 34 P. 510. Money paid or property surrendered under a merely void contract may, in a proper case, be recovered; but not so where the contract is illegal. Wharton on Contr. §§ 336, 340, 741. An illegal contract has been defined as 'an agreement with an unlawful object. It is not merely lacking in valid subject-matter, but its purpose is positively invalid.' Billingsley v. Clelland, 41 W. Va. 234, 244, 23 S. E. 812, 815."

We must apply the principles announced by the foregoing authorities to the facts of the present case. We leave out of consideration any application of the Bateman Act to those facts. In the first place, it is not clear that it does apply. But certain it is that it was not the theory upon which the trial court held the certificates invalid. Although pleaded the trial court made neither finding nor conclusion touching same. The defendants who pleaded it requested none. They did not advance their evidence to the point of establishing, if applicable, at just what point of time negotiation of the certificates created an indebtedness exceeding available revenues for the current fiscal year, nor which certificates so operated. While relied upon here, the record suggests an abandonment below of this claimed defense.

■ We eliminate also the presence of fraud. While the trial judge in his remarks at close of the trial intimates its presence in rather strong language, the most he was willing to say under the evidence was that either the boards of education had exchanged cer-

tificates to contractors and materialmen in amounts far exceeding the value of property received and services rendered, or that some one connected with the administration of the funds had embezzled them. He did not say which.

In so far as the evidence was developed, we can see nothing in it convicting any of the certificate holders seeking relief or their assignors of a charge of fraud. Fraud is a matter to be established by clear and convincing proof. Its existence should never rest upon mere suspicion or surmise. And when a fair appraisement of the trial court's conclusion on the subject goes no further than to find the existence of one or the other of two alternatives, under one of which, if it be the one actually existing, the takers or present holders of the certificates are absolved of fraudulent conduct, we cannot and should not, in denial of their rights, presume the other alternative to exist and hold them convicted of it.

■ The facts of the present case do not disclose a contract malum in se. So far from interdicting issuance of certificates of indebtedness for the purpose intended, the School Code under which the board of education proceeded expressly so authorized. The time and manner of their issue was held irregular and fatal both under the statute itself and under the Constitution. Indeed, the controlling statute was held unconstitutional. They are, therefore, under the law as interpreted by the trial court for this case, invalid in the sense that their collection cannot be enforced. But does this circumstance alone permit

the school districts, sustained in their claim of invalidity and thus shielded from payment of the certificates, to retain the fruits of their issuance? We think not under elementary principles of justice.

■ Stress is laid by appellees upon the circumstance that the total ·authorized issue far exceeded anticipated proceeds of the 5-mill levy approved and laid for direct charges under which classification falls cost of constructing new buildings. As proof of conscious wrongdoing, this circumstance, standing alone, scarcely suffices. If it suggests negligence, it does not prove fraud. Moreover, the argument is weakened by the suggestion fairly arising on the record that application of said levy to current quarterly assessments under the oil production tax was not reflected in the estimate of total revenue to be realized. The basis of estimating anticipated revenue to flow from the 5-mill levy was the preceding general assessment. Without approving the wisdom of their action or the legal right so to do, it is obvious that the amount of the certificates issued was largely influenced by the expectation of substantial sums from the application of said levy to current quarterly assessments of oil production running at the time 250,000 barrels daily, but presently curtailed to 30,000 barrels under a proration agreement.

That the anticipated revenues from the oil production tax were of major importance in the minds of the tax commissioners in approving the various levies for this school district is rendered certain by the concluding sentence of their order approving the levies, which reads: "The foregoing approvals are dependent upon the realization of taxes on oil production." Other evidence attests the same fact. These circumstances, which neither sustain the optimism of the officials involved nor furnish legal justification for the course pursued, at least, neutralize the evil imputation likely to arise from the naked showing of an aggregate authorized issue of certificates in an amount far in excess of the anticipated revenue to flow from the levy supporting same.

Eliminating, for the reasons stated above, application of the Bateman Act to the present case, the decision most relied upon by appellees, Board of Com'rs of McCurtain County v. Western Bank & Office Supply Co., 122 Okl. 244, 254 P. 741, deciding the effect of violation of a similar statute of that state, loses the persuasiveness it might otherwise carry. Whether the fact that, under the Oklahoma statute, a remedy is furnished creditors against officials violating the act, which the court held exclusive, whereas ours gives none, marks a distinction which should prove controlling, we therefore need not decide.

■ Appellees also place reliance upon the fact that the buildings are constructed upon grounds belonging to the school districts before issuance of the certificates coupled with the court's finding that they are permanently annexed to the realty and cannot be removed. Appellants assert no interest in the sites. The trial court could have meant no more than that they had become thus affixed and constituted a part of the real estate under the law of fixtures; not that they could not be physically severed without in-

jury to the fee as it existed before their construction. Counsel do not seriously urge any greater effect for this finding.

Whatever the rules applicable under the law of fixtures in controversies between parties entitled to invoke them, they have no place in administering the relief here sought where it is apparent no material injury can result to the fee from the act of removal and that to deny relief would perpetuate a manifest injustice.

The practical result of the facts disclosed is that the two school districts, the one of Hobbs and the other of New Hobbs, have each new school buildings of a reasonable aggregate value not less than $45,000 nor more than $65,000, for which they have paid nothing. Unpaid and repudiated certificates aggregating approximately $175,000 from the issuance of which the buildings arose are outstanding and worthless. For a portion of them substantial in amount the evidence discloses present holders to have paid from 80 to 95 cents on the dollar. As to others, the proof on bona fides of holding was not complete when the trial closed. But the prayer of the second cause of action is only that the buildings be decreed to a trustee in trust for all bona fide holders of said certificates who may within a reasonable time prove their interest therein with power in such trustee to sell the buildings and apply the proceeds to satisfaction of the interests of the respective claimants as such interests may in the meantime have been established.

We think it out of harmony with the sense of fair dealing and justice, for which the good people of these two school districts and Lea county are well known, to retain buildings so acquired after realizing that the obligations which produced them are invalid. To the extent the certificates or their proceeds went into the respective buildings, their present holders in equity and good conscience have an interest upon which they should be permitted to realize. The principle discussed and applied in the foregoing authorities fully sustains their right so to do.

It follows from what has been said that the decree appealed from must be reversed, and the cause remanded to the district court for further proceedings in conformity with the views herein expressed.

It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.