**NATIONAL CIVIL SERVICE LEAGUE, a Non-profit, Unincorporated Association, Plaintiff,**

v.

**CITY OF SANTA FE, NEW MEXICO, Defendant.**

**Civ. No. 9704.**

United States District Court,
D. New Mexico.

Dec. 17, 1973.

**1130**

William A. Sawtell, Jr., Catron, Catron & Sawtell, Santa Fe, N. M., for plaintiff.

Eloy F. Martinez, City Atty., Santa Fe, N. M., for defendant.

### OPINION AND ORDER

PALMIERI, District Judge.*

Plaintiff National Civil Service League brings this action against the defendant City of Santa Fe, New Mexico, for the recovery of damages for breach of an express contract or, alternatively, if no contract is found to exist, in quantum meruit for services rendered to and accepted by the defendant City.

The plaintiff is a non-profit, unincorporated association having its principal place of business and offices in Washington, D. C. The defendant is a municipal corporation organized and existing under and by virtue of the laws of the State of New Mexico. By separate order filed herein on August 29, 1973, and incorporated in the pre-trial order herein of October 1, 1973, jurisdiction was found to be present under the provisions of 28 U.S.C. § 1332(a), (c) and (d); a determination was made that the plaintiff has established the requisite citizenship of its individual members by pleading that none of these members is domiciled in or resident of the State of New Mexico and that, therefore, diversity does exist. It was further determined that in the State of New Mexico an unincorporated association may sue or be sued "in its common name for the purpose of enforcing for or against it any substantive right." N.M.Stat.Ann., 1953, § 51–18–5.1(A) (Repl.1962); *see also* Gonzales v. Oil, Chemical and Atomic Workers Int'l Union, 77 N.M. 61, 419 P.2d 257, 262 (1966); *cf.* Fed.R.Civ.P. 17(b)(1). At this juncture it is uncontroverted that none of the individual members of the plaintiff association is domiciled in or resident of New Mexico. Thus, incorporating the pre-trial order herein and reaffirming its finding of ju-

risdiction, it is clear that this case is properly before this Court. 28 U.S.C. § 1332(a)(c) and (d); Fed.R.Civ.P. 17(b); N.M.Stat.Ann., 1953, § 51–18–5.-1(A) (Repl.1962).

The National Civil Service League has as one of its objectives and purposes the improving of municipal personnel systems and relations. Pre-trial order, Uncontroverted Facts C. On or about July 16, 1971, the plaintiff submitted to the defendant City of Santa Fe a written proposal for the drafting of a municipal personnel ordinance, and providing for the technical, administrative and training assistance in developing a modern, comprehensive personnel management system for the City. Pre-trial order, Uncontroverted Facts D. By letter dated August 23, 1971, Peter Hay, then City Manager for the City of Santa Fe, wrote to Edward A. Griggs, Project Director for the plaintiff, as follows in material part:

"I am pleased to inform you that the City of Santa Fe has accepted your proposal, dated July 16, 1971, to provide meaningful assistance to the City of Santa Fe in developing an effective personnel management system.

"As stated in your proposal, a mutually agreeable time will be set to begin work. Any other details that may need clarification will be resolved at that time."

In the July 16, 1971, proposal from the plaintiff to the defendant City was included a broad outline of what the plaintiff would do in establishing a "personnel management system" for the City and included therein was a provision whereby the plaintiff would "furnish all necessary staff, materials, travel, printing, etc., except for local desk space and phone use for a fixed fee of $21,000, payable within 30 days of the delivery of final guides."

A City Manager of a municipality having a mayor-council form of government is required to "[e]mploy and dis-

---

* Of the Southern District of New York, sitting by designation.

charge all persons engaged in the administrative service of the municipality." N.M.Stat.Ann., 1953, §§ 14–12–3, 14–13–14, subd. A(2) (Repl.1968). The "corporate authority of a municipality" in New Mexico, however, "is vested in the governing body which shall constitute the legislative branch of the municipality and shall not perform any executive functions except those functions assigned to it by law." N.M.Stat.Ann., 1953, § 14–11–2 (Repl.1968). The City of Santa Fe has a mayor-council form of government, Sante Fe N.M., Code (1953); Ordinance 1076, March 31, 1954, as amended, and as such the Council is the governing body of the City. *See* N.M.Stat.Ann., 1953, §§ 14–9–1, 14–11–2 (Repl. 1968). The City Council has broad powers in the management and government of the municipality. N.M.Stat.Ann., 1953, § 14–11–3 (Repl.1968), and specifically conferred upon the municipality is the power to establish, by ordinance, a merit system for general regulation of municipal employees. N.M.Stat.Ann., 1953, § 14–12–4 (Repl.1968).

■ It is unclear whether or not the City Manager had the authority to enter into a "contract" with the plaintiff, but this is irrelevant in the context of this case. If he did have such authority under the relevant New Mexico statutes and City of Santa Fe ordinances then a binding contract was entered into when the plaintiff received the August 23, 1971, acceptance of its July 16, 1971, proposal (or in contractual parlance, "offer") from the City Manager. *See* Tatsch v. Hamilton-Erickson Mfg. Co., 76 N.M. 729, 418 P.2d 187, 189 (1966). That performance was to take place or begin at "a mutually agreeable time" does not render the contract vague, indefinite or uncertain so as to preclude its enforcement. *See* 1 Corbin on Contracts §§ 95, 96, at 393–423 *passim* (1963). The terms of the proposal were quite definite as to what the plaintiff was to do, the manner in which this was to be done, the final services or products to be rendered to the City of Santa Fe and the time in which all of the forego-

ing was to take place once the project was begun.

■ Of note is the fact that, inter alia, under the proposal the plaintiff was required to deliver to the City "a set of personnel rules, with supporting regulations; . . . a civil service law that [would] provide a legal basis for the rules, . . . an organizational chart reflecting personnel functions and definition of personnel agency functions in relation to other agencies within the jurisdiction; [and] a report with estimated cost to implement the new system, along with a suggested timetable and methodology." Thus, while it is apparent that the general import of the contract between the parties was in the nature of an agreement for services and consultation, it is conceivable that it could also be termed a "transaction in goods" and therefore fall within the ambit of the New Mexico Uniform Commercial Code, Article 2, Sales, N.M.Stat.Ann., 1953, §§ 50A–2–101 to 50A–2–725 (Repl.1962, Supp.1973). If so, then the Code's requirements for a valid and enforceable contract have also been satisfied in this case. Section 50A–2–309 of the New Mexico Code provides that "[t]he time for . . . any . . . action under a contract if not provided in this article or agreed upon shall be a reasonable time." "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." Section 50A–1–204(2); *cf.* 1 Corbin on Contracts § 96, at 416 (1966). In the case at bar, "there is [a] writing [the proposal combined with the acceptance] sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent . . . ." Section 50A–2–201(1). As will be seen, *infra*, the plaintiff commenced performance of its obligations under the proposal within a reasonable time; suffice it to say that the necessary elements of a valid, binding contract, whether in terms of a services contract or one for the sale of

goods, see N.M.Stat.Ann., 1953, § 50A–2–106(1) and (2), are present.

On the other hand, if the City Manager did not have the authority to enter into the agreement with the plaintiff, then the City Council had the authority and, in this case, exercised such authority, either to enter into a binding contract with the plaintiff or, alternatively, to ratify the initial contract made by the City Manager on behalf of the City.

■ Without delving into the labyrinthine intricacies of the interrelationship of the United States Department of Housing and Urban Development, the Santa Fe Model Cities Program and the City of Santa Fe, it is clear that the program which the plaintiff undertook for the City in its proposal was to fit into a common scheme in which all three governmental bodies were intimately involved. By letter dated November 2, 1971, Benito Vigil, Director of the Manpower and Economic Division of the City Demonstration Agency (an agency of the Santa Fe Model Cities Program), wrote to Edward A. Griggs, the plaintiff's Project Director, as follows in part:

"As per our telephone conversation, enclosed is a copy of the proposal for the Central Manpower System. This proposal will be modified to incorporate the contractual fees for the League in establishing the City Personnel System."

A specific line-item entry was made in the Project Budget for the Central Manpower System of $21,000.00 for "Consultants and Contract Services." On December 15, 1971, the Santa Fe City Council, by unanimous vote of the eight Councilmen present, passed Resolution No. 1971–50, "A Resolution for Administration of Central Manpower System by the City Personnel Department." Under this Resolution, which was signed by the Mayor of the City as "Passed, Adopted and Approved" on December 15, 1971, the City allocated $25,000.00 of "Model Cities supplemental funds" to reimburse the City Personnel Depart-

ment which, by Letter of Agreement with the Santa Fe City Demonstration Agency of December 15, 1971, had agreed to become the "Operating Agency" for what was termed the Central Manpower System Project for its expenses in conducting this project. Of especial import in the Letter of Agreement was a provision whereby "[t]he monies allocated Consultant and Contract Services will be used to achieve the goals and objectives of . . . setting up of a merit system." Under part III of the Letter of Agreement the sum of $21,000.00 was allocated to "Consultants and Contract Services," of which $6,000.00 was designated as being the "Model Cities Share" and $15,000.00 as the "Local Share." The Letter of Agreement was signed by Peter Hay as City Manager and Salvadore Vigil as City Demonstration Agency Director and was attested to by Bonnie Lopez as City Clerk-Treasurer. The Resolution, No. 1971–50, and the Letter of Agreement, together with the relevant minutes of the City Council meeting of December 15, 1971 and the fact that the "Consultants and Contract Services" allocation was $21,000.00, the precise amount called for by the plaintiff's proposal, leads to the ineluctable conclusion or, in the context of this Opinion, fact that the City of Santa Fe duly accepted the plaintiff's proposal. The Resolution was passed by all members of the City Council present at the December 15, 1971, meeting, Santa Fe, N.M., Code § 2–32 (1953), and was endorsed "approved" by the Mayor of the City on the same date, Santa Fe, N.M., Code § 2–33 (1953). This was sufficient to constitute the City's acceptance of the contract with the plaintiff.

■ That the City Attorney may not have drafted the contract or that his advice thereon does not specifically appear in the record, Santa Fe, N. M., Code § 2–47 (1953), or that the City Clerk-Treasurer may not have affixed the City's seal to the Resolution, Santa Fe, N. M., Code §§ 2–59, 1–8 (1953), does not change this result. It is not clear

that these provisions have any applicability to the validity, and enforceability, of a contract entered into by a municipality. If the City Council passes the contractual resolution and the Mayor signs it as approved, a contract not otherwise illegal is in existence. Santa Fe, N.M., Code §§ 2–32, 2–33 (1953).

■ By the same token, in passing Resolution 1971–50 and with its signed approval by the Mayor, the City can be said to have ratified the contract with the plaintiff. Terry v. Humphreys, 27 N.M. 564, 203 P. 539, 540 (1922), stands for the proposition that " '[a]ny transaction with the [other party] relating to the subject-matter of the contract and inconsistent with an intention to rescind' amount [sic] to ratification." *See also* Woods v. Van Wallis Trailer Sales Co., 77 N.M. 121, 419 P.2d 964, 966 (1966); Ballew v. Denson, 63 N.M. 370, 320 P.2d 382, 384 (1958); Armijo v. Nuchols, 57 N.M. 30, 253 P.2d 317, 320–321 (1953).

This conclusion, that the City either accepted the contract or at the least ratified it, is further reinforced by two other facts in this case. On or about February 8, 1972, the plaintiff submitted to the City a "Personnel Management System," comprised of a draft ordinance establishing a personnel merit system for the City along with an employee manual, rules and regulations and personnel forms to supplement the draft ordinance. On February 18, 1972, the City Council considered Ordinance No. 1972–3, "An Ordinance Relating to and Establishing a Personnel Plan, Merit and Performance System for Employees of the City of Santa Fe, New Mexico, . . . ." After some discussion and subsequent minor modification of the proposed Ordinance, the City Council, by vote of six to one, adopted Ordinance No. 1972–3. This Ordinance, apart from the slight changes made by the Council during its discussion, was a verbatim recital and adoption of the draft ordinance submitted by the plaintiff. *See* N.M. Stat.Ann., 1953, §§ 50A–2–201(3)(c), 50A–2–606 (Repl.1962). Ordinance No.

1972–3 was approved and signed by the Mayor of Santa Fe on February 18, 1972, and attested to by the City's Municipal Clerk.

Additionally, the plaintiff's employees visited Santa Fe at various times from September through December of 1971 and while there conducted numerous interviews with municipal officials and employees, did various personnel studies and desk-audits (apparently a normal and necessary practice in this field), and collected other pertinent information. Two employees of the City also received instruction in personnel management at the plaintiff's offices in Washington, D. C. The information collected at Santa Fe by the plaintiff's employees was analyzed and used by them to draw up the various documents in the "Personnel Management System" that was submitted to the City. It is inconceivable that the City, through its officials and employees, did not have notice of these facts and occurrences but simply assumed that the plaintiff's employees were wandering about the City and its offices in a gratuitous gesture of service. In the words of the New Mexico Supreme Court, "any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm." Armijo v. Nuchols, 57 N.M. 30, 253 P.2d 317, 320 (1953). That the party in question is a municipal government does not change this result. *See, e. g.,* Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 996–997 (1934).

■ In sum, the City either entered into a valid contract with the plaintiff when the City Manager accepted the plaintiff's proposal or the City itself accepted the contract when it passed Resolution No. 1971–50 through its Council and adoption by the Mayor or through its acceptance of the plaintiff's contracted-for personnel plan in enacting Ordinance No. 1972–3. *See* 1A Corbin on Contracts § 234, at 234 (1963); 2 Corbin on Contracts § 365, at 271–72 (1950); Johnson v. Hospital Service

**1134**

Plan, 25 N.J. 134, 135 A.2d 483 (1957). It is clear that the City had the power to establish a merit system for its employees, N.M.Stat.Ann., 1953, § 14–12–4 (Repl.1968), and thus the action of the City, either through the agency of its City Manager, N.M.Stat.Ann., 1953, § 14–13–14 (Repl.1968), or through its own action via Resolution and Ordinance, N.M.Stat.Ann., 1953, §§ 14–11–3, 14–11–2 (Repl.1968), duly signed by the Mayor, N.M.Stat.Ann., 1953, § 14–10–7 (Repl.1968), was not ultra vires its legal powers. The contract is valid and enforceable.

Even if the contract is not valid and enforceable, the plaintiff has shown that it is entitled to recover in quasi-contract or quantum meruit for the services rendered to and benefits conferred upon the City. The City now has a merit system for its employees and the Court finds that the services rendered to and benefits conferred upon the City exceed the value of the contractual agreement. The plaintiff was prevented from producing an organizational chart and estimated cost figures by the City's action in refusing to abide by its contractual agreement.

The Court therefore finds that the plaintiff is entitled to recover from the defendant the sum of twenty-one thousand dollars ($21,000.00), and concludes that, either by virtue of the express contract or for services rendered to and benefits conferred upon the City, the City is justly indebted to the plaintiff and the plaintiff is legally entitled to judgment against the defendant in the amount of twenty-one thousand dollars ($21,000.00). *See* Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993 (1934); Johnson v. Hospital Service Plan, 25 N.J. 134, 135 A.2d 483 (1957).

The Court further concludes that the plaintiff is entitled to recover from the defendant interest on the sum of twenty-one thousand dollars ($21,000.00) at the rate of six per cent (6%) per annum from February 9, 1972, until paid. N.M.Stat.Ann., 1953, § 50–6–3 (Repl.1962).

The "Bateman Act" of the State of New Mexico, N.M.Stat.Ann., 1953, § 11–6–6 (Repl.1966, Supp.1973), which precludes a municipal governing body from becoming indebted during any current year in an amount which, "at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year," provides that "any indebtedness for any current year which is not and cannot be paid, as above provided for, is void." The Bateman Act, however, is an affirmative defense which must be pleaded and proven with the burden upon the party asserting it to so prove its application. McAtee v. Gutierrez, 48 N.M. 100, 146 P.2d 315, 316 (1944). The City has not shown that the funds were unavailable at the time that Resolution 1971–50 was duly passed by the City Council to pay for the contractual services of the plaintiff. Indeed, the fact that the sum of $21,000.00 was specifically allocated for these services at the time, from "Local" funds (presumably the City budget and treasury) and from "Model Cities" funds (over which the City was given financial control and supervisory authority), belies any inference that the funds were not available. That these funds may have been diverted from the allocation to pay for the plaintiff's services and are not now readily available for this purpose is of no import. It appears that the funds were available and actually allocated at the time that the Resolution was made. This is sufficient. Capital City Bank v. Board of Commissioners, 27 N.M. 541, 203 P. 535, 536 (1921), is still the law in New Mexico and is dispositive of any question of the Bateman Act's application in this case.

Plaintiff is therefore entitled to the sum of twenty-one thousand dollars ($21,000.00), plus interest at the rate of six per cent (6%) per annum from February 9, 1972, until paid, and, accordingly, it is ordered that the defendant pay the same to the plaintiff.

This Opinion shall constitute the Court's Findings of Fact and Conclu-

sions of Law in accordance with Fed.R. Civ.P. 52(a). All requested Findings and Conclusions inconsistent with the foregoing are hereby denied.

Judgment shall be entered consonant herewith.