

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2659

Re: Whether certain
machinery installed
in the canning plant
of the Texas Prison
System is the property
of the System or of
the Cameron Can Machinery
Company.

In our Opinion No. O-2595 we had for consideration the question as to whether or not a warrant should issue in payment for certain machinery installed in the canning plant at the State Farm Industries in pursuance of a contract made between the Cameron Can Machinery Company and the Prison System, the latter acting by and through its general manager. We expressed the view that only the State Board of Control was authorized to bind the State on such a contract and that consequently the account should not be passed for payment.

In your letter of November 7, 1940, you request our opinion as to whether such machinery is now the property of the Texas Prison System or whether it belongs to the Cameron Can Machinery Company, and whether or not said company would be authorized to remove the property from the building belonging to the Texas Prison System. Along with your letter of request you enclose a letter dated October 29, 1940, from Mr. Ellingson, General Manager of the Texas Prison System, addressed to yourself, and advising that the equipment covered by the contract can be removed and returned to the Cameron Can Machinery Company. We understand him to mean by this that the machinery installed under the contract is such that it can be removed and returned without injury to any of the other property belonging to the Texas Prison System, in fact Mr. Ellingson has verbally advised us that such is true.

In the case of Salt Creek T. P. vs. King Iron Bridge and Manufacturing Co., 33 Pac. 303, the Supreme Court of Kansas was construing a contract wherein the Salt Creek township had contracted with the King Iron Bridge and Manufacturing Company for the erection of a bridge along the highway of said city. The court held that the contract was void because the city did not have the authority to contract for the erection of the bridge. The court did state as follows, however:

"* * *. Of course, as the bridge was constructed upon the highway with the permission of the authorities, the company may remove the same. As the township refuses to pay for the bridge, it can have no interest or right to keep it. All the parties acted without any statutory authority."

In the case of Floyd County vs. Owego Bridge Co., 137 S. W. 237, the Court of Appeals of Kentucky was construing a contract entered into between a county and a bridge company for the erection of three bridges. The court held the contracts to be void because the agents of the county who had entered into the contracts were without authority to make such agreement. The court concluded as follows:

"However, there is a rule which is applicable to this case. As was said by the Supreme Court of the United States, in Marsh v. Fulton County, 10 Wall. 676, 19 L. Ed. 1040, the obligation to do justice rests upon all persons, natural and artificial; and if a county obtains money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. Under this rule, Floyd county will not be permitted to retain the bridges and not pay for them. Appellant having declined to pay for the bridges, appellee will be permitted to remove the bridges and all the material which it furnished in their construction. This is the

only remedy the law affords appellee.  City
of Bardwell v. Southern Engine & Boiler
Works, 139 Ky. 222, 113 S.W. 97, 20 L.R.A.
(N.S.) 110; Floyd County v. Allen, 137 Ky.
535, 126 S. W. 124, 27 L.R.A. (N.S.) 1125."

In the case of Lee vs. Board of Commissioners of
Monroe County, 114 Fed. 744, the county commissioners had
entered into four contracts with the bridge company for the
construction of bridges across the streams in the county.
The court held that the commissioners were unauthorized to
enter into such contracts and that such contracts were void.
The question before the court was whether or not the bridge
company had the right to remove the bridges and whether or
not such bridges belonged to the county or to said company.
The court stated the proposition and answered the same as
follows:

"The provisions of the statutes of the
state of Ohio relating to the purchase and
erection of bridges were not complied with by
the county commissioners before entering into
the contracts with the Canton Bridge Company,
and it is conceded by both parties to this
suit that they were invalid, and no recovery
could be had upon them, nor upon the warrants
given in payment, for any part of the purchase
price of the bridges.  * * *.

"* * *.

"* * *.  But while the law affords no
remedy, equity, although it will not enforce
the contract or create a contract between the
parties on account of the acceptance and re-
tention of the property, when the property is
in existence, and in the hands of the defendant,
will not allow it to retain that to which it
has no title whatever, and prevent the owner
from reclaiming it.  The case presented by the
bill shows no moral turpitude in the transaction,
and, although the bridge company should have
ascertained whether each step provided by the
statutes had been properly taken, the law placed
upon the defendant the duty of taking those
steps.  It was necessary for it to comply with

every provision of the statutes in that behalf before entering into these contracts, and it represented to the bridge company that it had so complied, and thus misled the bridge company into entering into the agreement, the carrying out of which placed these bridges in the hands of the defendant. The complainant has no remedy at law, and to deny him equitable relief would be to enforce the contract on the part of the bridge company, and to allow the defendant to repudiate its part of the same contract, and thereby appropriate, without compensation, property to which it had no legal or equitable right. It was said by the federal supreme court in the case of Marsh v. Fulton Co., 10 Wall. 676, 684, 19 L. Ed. 1040, 1043:

"'The obligation to do justice rests upon all persons, natural or artificial; and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'

"If there was any fraudulent purpose of the bridge company, or connivance on its part at the action of the defendant in disregarding the provisions of the statutes, so that the purpose for which those provisions were enacted should be thwarted, then neither the bridge company nor this complainant could come into a court of equity and ask any relief, as they could not come into court with clean hands; and the relief would be denied for that reason, and not on the doctrine of the public policy of the state. There is no public policy recognized by the courts which allows any person, natural or artificial, to take the property of another, and appropriate it to its own use, and deny to the person who is innocent of fraud the right to reclaim it. * * *."

No rule of justice requires that the State should retain this machinery and never pay for it. If the machinery can be removed without injury to any of

the other property belonging to the State, as we are informed and assume the case to be, equity and natural justice would seem to require that it be returned. Under such circumstances to hold otherwise, in effect, would be to enforce the contract as against the Company but to relieve the State of its obligations under it. Since the contract was void, as held in our Opinion No. O-2595, we do not believe that it can be enforced as against either party, and in equity the property should be and may be returned. To that end it is our opinion that the General Manager of the Texas Prison System may permit agents of the company to enter the premises and take its property, injury or damage to any property of the State to be strictly guarded against.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Glenn R. Lewis*

Glenn R. Lewis
Assistant

GRL:RS

APPROVED DEC 4, 1940

ATTORNEY GENERAL OF TEXAS